SCOTT *v.* SHAIRRICK.

5-682                                                   279 S. W. 2d 39

Opinion delivered May 16, 1955.

*Henry B. Means* and *W. H. McClellan,* for appellant.

*Cole & Epperson,* for appellee.

WARD, J. Appellee, James Shairrick, while riding as a guest in an automobile owned and driven by appellant, J. L. Scott, was injured by the alleged willful negligence of appellant in operating the automobile. Suit was filed by appellee, resulting in a jury verdict and a judgment against appellant.

The complaint contained the following material allegations of negligence: On or about the second day of March, 1954, the plaintiff was riding as a guest in an automobile owned and being operated by the defendant, J. L. Scott, who on account of willful negligence, wrecked said automobile and injured the plaintiff; that just prior to the said wreck, the defendant was willfully operating at a high and excessive rate of speed, and willfully whipping in and out of traffic and from one side of the road to the other, and was willfully passing vehicles under extremely dangerous circumstances; and although the plaintiff and others in said car earnestly protested the manner in which the defendant was driving, and made numerous requests that he slow down and get in his proper line of traffic, and warned the defendant that he was going to hurt himself or someone else, the defendant ignored them and continued to operate the automobile in a willful, wanton and careless disregard to the rights of the plaintiff and others; that at the point where the wreck occurred, the defendant was willfully attempting to pass a vehicle traveling in his direction in the face of oncoming traffic and willfully ran his vehicle into a

ditch causing said wreck and personal injuries to the plaintiff.

Appellant's answer was a general denial, contributory negligence on the part of appellee, and that appellee, being a gratuitous guest, was barred from recovery by Ark. Stats., § 75-913 and § 75-915—commonly called the Guest Statutes.

*Testimony.* There is very little conflict in the testimony given by the witnesses for both sides. On March 2, 1954, appellant and appellee together with Milton Van Dusen, Paul Register and C. L. Honold, all single boys in their early twenties, got together in Malvern during the noon hour and arranged to go to the horse races at Hot Springs. They left in appellant's car with appellant driving and arrived at the race track shortly before the races began. Appellee, Van Dusen and Register went into the track while appellant and Honold went to a liquor store nearby where appellant purchased a pint of whiskey and Honold purchased a pint of vodka or gin before they joined the others inside. During the time the races were in progress and between each race all of the boys except appellant drank some beer, perhaps as much as 4 to 6 bottles each during the entire period. Appellant during this time drank the liquor as a mixed drink, perhaps mixed with beer. None of the boys were observed by the others as becoming drunk or unduly under the influence of liquor. After the wreck, however, and after the boys had been taken to different hospitals appellant's doctor testified that he [appellant] was to some extent under the influence of liquor, while appellee's doctor testified that he found nothing to indicate that appellee was under the influence of liquor or that he had drunk any liquor.

After the races were over appellant stayed to cash a ticket on the last race while the other boys went to the car. When appellant returned to the car no one noticed that he was under the influence of intoxicating liquor and they all got in the automobile and started home. Van Dusen and Register were in the front seat with

appellant and appellee and Honold were in the back seat. While they were on a cut-off road that connects with Highway 270 appellant drove across a bridge and around a sharp curve at a speed so great that it prompted Register to ask him to slow down. Soon after they reached Highway 270 appellant drove off onto the shoulder of the highway almost hitting a mailbox, and appellee and Register protested that appellant was driving too fast and asked him to slow down. Further down the highway appellant approached a curve and Register again reminded him to be careful because he (Register) had turned over there once before. As appellant approached the curve he passed a car going in the same direction while a truck was coming in the opposite direction, and appellant in an apparent attempt to avoid a collision ran onto the gravel shoulder of the highway causing the car to skid and turn over, injuring appellee seriously and injuring some of the other boys slightly. Appellee testified that he warned appellant about his fast driving and asked him to slow down more than once but the other boys remembered appellee giving such warning one time only.

*Points relied on by appellant.* Appellant sets out several separate grounds on which he relies for a reversal, but we deem it necessary to discuss at length only three of the assigned grounds, to-wit: (a) The refusal of the trial court to direct a verdict in his favor; (b) Giving appellee's requested Instruction No. 4; and, (c) The refusal of the trial court to set aside the verdict.

(a) At the conclusion of all of the testimony appellant requested the trial court to instruct the jury to return a verdict in his favor, but the court refused to do so. The reason assigned by appellant for asking for an instructed verdict is that "the undisputed evidence shows appellee guilty of negligence in drinking with appellant and riding with him in his condition." This reason and this contention cannot be sustained. In effect this was a plea by appellant of contributory negligence on the part of appellee, yet this very question was, by proper

instructions, submitted to and passed on by the jury. The testimony in this case did not justify the court in holding as a matter of law that appellee was guilty of contributory negligence. The jury was justified in finding that appellee did not know when he entered the car to return to Malvern that appellant was under the influence of liquor. Also it is undisputed that appellee protested one or more times against the manner in which appellant was driving, and that there were other protests—all apparently unheeded by appellant.

Appellant cites *Sparks* v. *Chitwood Motor Company,* 192 Ark. 743, 94 S. W. 2d 359, and *Lewis* v. *Chitwood Motor Company,* 196 Ark. 86, 115 S. W. 2d 1072, where verdicts were directed for the defendants, and he states that they directly govern this case. The facts in both cited cases were very similar but they are readily distinguishable from the facts in this case, as a few excerpts from the opinion in the *Sparks* case will demonstrate. In speaking of the testimony we said: ''There was some conflict in the testimony but all of the testimony shows that they were all drinking and the preponderance of the testimony shows that they were all drunk.'' Again it was pointed out ''appellant was bound to know all about it; he knew that Miller was drunk and careless, and according to all of the evidence, acquiesced in it, and made no protest.'' It was also said: ''Of course the guest might not be guilty of negligence simply because he failed to protest. If the occupant of the automobile did what a person of ordinary prudence would have done under the circumstances, he was not guilty of contributory negligence.'' In the *Lewis* case, *supra,* it was recognized that before the plaintiff would be barred from recovery he must know, or by the exercise of ordinary care should know, ''that the driver was intoxicated or under the influence of liquor to such an extent as to make him a careless or incompetent driver.'' Under the evidence in the case under consideration it was for the jury and not the court to decide the extent of appellee's knowledge concerning the appellant's condition as well as his opportunity for such knowledge.

Appellant cites *Wilson* v. *Holloway*, 212 Ark. 878, 208 S. W. 2d 178, to sustain his assertion that the negligence of appellant should be imputed to appellee. The cited case is not in point because there the occupants of the car were on a joint enterprise and damages were sought against a third party and not against the driver of the car in which they were occupants.

Associated with above contention is the further argument that "the evidence was insufficient to prove willful and wanton negligence as required by the Guest Statutes." It is specifically urged that, under the Guest Statutes, the evidence failed to show willful and wanton negligence on the part of appellant. Appellant says he considers Ark. Stats., § 75-913 and § 75-915 to be synonymous with respect to the conditions of recovery. We agree with this statement since it was similarly so stated in *Steward, Administrator* v. *Thomas*, 222 Ark. 849, 262 S. W. 2d 901. In the first cited statute, before there can be a recovery, the automobile must be "willfully and wantonly operated in disregard to the rights of others." In the latter statute the "injury shall have been caused by the willful misconduct" of the driver.

It is clear from the evidence in this case that the trial court had no right to declare as a matter of law that appellant's negligence was not of the degree described in the above statutes. The degree of appellant's negligence was therefore a matter to be presented to the jury, as was done here. In *McAllister, Administrator* v. *Calhoun*, 212 Ark. 17, 205 S. W. 2d 40, we quoted with approval from *Splawn, Administratrix* v. *Wright*, 198 Ark. 197, 128 S. W. 2d 248: "Whether an automobile is being operated in such a manner as to amount to wanton and willful conduct in disregard of the rights of others must be determined by the facts and circumstances of each individual case." We further stated "the excessive rate of speed at which the car was being driven at a time when war-time driving restrictions were in effect together with the driver's failure to heed the protests of guests, were sufficient, in our opinion, to make a ques-

tion for the jury on the issue of willful and wanton negligence.''

It is true, as stated in *Cooper* v. *Calico,* 214 Ark. 853, 218 S. W. 2d 723, that gross negligence is not enough, and, as stated in the *Splawn* case, *supra,* the ''grade of negligence should be unusually strong and convincing before the operator can and will be convicted of such.''

Under many circumstances it is difficult to draw the line between willful negligence and gross negligence. ''To be willfully negligent,'' as stated in the *Splawn* case, *supra,* ''one must be conscious of his conduct, and, although having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury.'' Since the testimony here indicates that appellant was driving at an excessive speed under the existing conditions and since it shows that he barely avoided a wreck on two different occasions just previous to the wreck and that he repeatedly ignored warnings to drive more carefully, we are forced to the conclusion that the trial court properly allowed the jury to decide the degree of appellant's negligence.

(b) Appellant strongly insists that it was error for the trial court to give appellee's requested Instruction No. 4. In this instruction the court told the jury in effect that if they found appellant *willfully drove* his car at such speed and in such manner as to contribute to the wreck, it could take that into consideration in determining whether appellant was guilty of *willful misconduct* in the operation of his car. Appellant's specific objection is that the court used the words ''willfully drove'' when he should have said ''willfully and wantonly drove'' the car in disregard to the rights of others. We think this objection is not well taken. It will be observed that the gist of the instruction is not the words ''willfully drove'' but it is the words ''willful misconduct,'' and that the latter words are the exact words used in Ark. Stats., § 75-915. Also in the *Steward* case, *supra,* it was said: ''It is hard to see how a person could act

in willful and wanton disregard of the rights of others without being guilty of willful misconduct or vice versa.'' Under the quoted statement, with which we agree, it appears then that' the wording of the instruction objected to by appellant is sufficient to comply with either or both of the Guest Statutes.

(c)  It is insisted by appellant that the trial court should have set the verdict aside because of misconduct on the part of the jury.  On appellant's motion to set aside the verdict it was contended in effect that the jury obtained [inferentially] information that appellant was protected by insurance, and that he [appellant] knew nothing about it until after the jury had returned its verdict.  We have carefully read the record and have concluded that the trial judge did not commit reversible error in refusing to set the verdict aside.  According to the testimony of the sheriff, who was the only witness on the motion, the incident complained of was substantially this: After the jury had been charged by the court and after the attorneys had made their arguments, the sheriff in company with several other men, was in a room adjacent to the courtroom.  Someone pointed to a certain person and asked the sheriff who he was.  It developed that the person inquired about was Herman Lindsey, former Chief of the Arkansas State Police.  At that time someone in the group mentioned that he was an insurance adjuster.  When the sheriff was asked if all of the members of the jury were in the group he stated ''One was.  One of them was a member of the jury but who the others were I just really don't recall.''  The person who identified Lindsey as an insurance adjuster was not a member of the jury but he thought the man who asked about the identity of Lindsey was a member of the jury. He was sure that nothing was said about the appellant being covered with insurance.  At the hearing on the motion the attorney for appellant stated that Herman Lindsey was not subpoenaed as a witness for the defendant but that he had been directed to be present and that he was excused from the witness rule and permitted to remain in the courtroom throughout the trial.  It was

shown that Lindsey was in and out of the courtroom during the trial, but it was not shown that he sat with or in any way was associated with the defendant or his counsel.

Under the above factual situation it seems unlikely that the jury was in any way prejudiced, or that the trial court abused its discretion in refusing to set aside the verdict. Appellant objects to the court's refusal to allow him to call one of the jurors to testify at the hearing on the motion. The trial court was of course correct. A juror cannot be examined to establish a ground for a new trial unless the alleged ground be that the verdict was arrived at by lot. See Ark. Stats., § 43-2204. Although this statute is digested under title of Criminal Procedure, it has many times been held to apply in civil cases. See *St. Louis, I. M. and S. R. R. Co.* v. *Cantrell,* 37 Ark. 519, 40 Am. Rep. 105; *Griffith* v. *Mosley,* 70 Ark. 244, 67 S. W. 309; *Reiff* v. *Interstate Business Men's Accident Association of Des Moines, Iowa,* 127 Ark. 254, 192 S. W. 216; *Chess & Wymond Company* v. *Wallis,* 134 Ark. 136, 203 S. W. 274; and *Burns* v. *Vaughan,* 216 Ark. 128, 224 S. W. 2d 365, 12 A. L. R. 2d 433.

Appellant makes certain allegations of error on the part of the trial court in giving certain instructions requested by the appellee and in refusing to give certain instructions requested by him. We have carefully read all of the instructions questioned by appellant and find no reversible error. Some of the alleged errors were cured by other instructions given by the court and some have already been disposed of in this opinion.

Affirmed.

Chief Justice SEAMSTER not participating.