HARKRIDER *v.* COX.

5-2133 334 S. W. 2d 875

Opinion delivered May 9, 1960.

166

*Shaver, Tackett & Jones,* for appellant.

*Lookadoo, Gooch & Lookadoo* by *J. Hugh Lookadoo,* for appellee.

CARLETON HARRIS, Chief Justice. This is the second appeal of this case. See *Harkrider* v. *Cox,* 230 Ark. 155, 321 S. W. 2d 226. The original judgment was reversed, and the cause remanded, because of an abstract instruction given.[1] On re-trial, the jury returned a verdict in favor of appellee, Oma Lee Cox, for $8,000, and for the appellee, J. C. Cox, Jr., the sum of $625. From the judgment so entered, appellant brings this appeal.

A brief resume of the facts show that on November 16, 1957, Oma Lee Cox, a young lady sixteen years of age, was living a short distance from Curtis Junction in Clark County, Arkansas. Miss Cox was a senior in high school, and worked on Saturdays and holidays at a department store in Arkadelphia. She generally would catch a bus to that city, but on occasion had ridden with a neighbor, G. W. Harkrider, who also was employed in Arkadelphia. On the aforementioned date, she was given a ride by appellant in his 1952 Chevrolet pickup truck. They proceeded on U. S. Highway 67, where traffic was heavy; there was an extremely dense fog, testimony establishing that visibility was limited to a distance of fifty to one hundred feet. In attempting to overtake and pass a cattle truck, which was proceeding in front of him at approximately 40 miles per hour, Harkrider

---

[1] On December 8, 1958, this Court reversed and dismissed the judgment obtained by appellee in the trial court, holding there was no substantial evidence in the record to establish wanton and willful negligence. On March 2, 1959, a rehearing was granted, the opinion of December 8th withdrawn, and a substituted opinion filed, wherein the judgment in the trial court was reversed and the case remanded.

moved to the left side of the highway, and collided with an oncoming vehicle. Miss Cox suffered serious injuries, and through her father as next friend, instituted suit against appellant. Mr. Cox sought recovery individually for hospital, medical, and nursing bills, and loss of services of his daughter. On trial, the amounts, hereinbefore mentioned, were awarded.

For reversal, appellant relies upon seven points, the first being a contention that the evidence was not sufficient to sustain a finding of willful and wanton disregard on the part of Harkrider. This point was thoroughly and fully discussed in the opinion of March 2, 1959, including a full recitation of the events leading up to, and including, the collision. The court concluded its discussion on this point by stating ''the rule is, that when fair-minded men might differ, then the question is one for the jury'', and held that a jury question was made as to whether Harkrider was guilty of willful and wanton negligence. The proof in the present case, relating to the collision, was practically the same as in the first trial, no less substantial, and no additional reasons or arguments are made which are persuasive of an erroneous holding.

Next, appellant complains of certain instructions given by the court (3, 4, 5, 6, 7, 11, 12, 13, 14 and 14½). Instruction No. 3 defines ''proximate cause''; No. 4 defines ''ordinary care''; No. 5, ''negligence''; No. 6, ''contributory negligence''; and No. 7, ''gross negligence''. These instructions correctly defined the terms involved, but appellant argues that the instructions led the jury to believe that appellees were entitled to recover on a showing of mere negligence, or negligence less than the willful and wanton degree. We disagree. As stated in *Pinkerton* v. *Davis*, 212 Ark. 796, 207 S. W. 2d 742:

''When all the instructions are thus considered we cannot say that they incorrectly presented the law, or that the jury could have been misled thereby.''

In Instruction No. 8, the court defined ''willful and wanton negligence''. Such instruction was as follows:

"To operate an automobile in willful and wanton disregard of the rights of others is a course of conduct which involves deliberate, intentional or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom. It is greater than gross negligence.

To be willfully negligent, one must be conscious of his conduct, and, although having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury."

In Instruction No. 18, the court instructed the jury as follows:

"It is agreed by the parties hereto that Oma Lee Cox was a guest in the pickup truck operated by the defendant Harkrider. Our law provides that no person transported as a guest shall have a cause of action against the operator unless the vehicle was willfully and wantonly operated in disregard of the rights of others.

Therefore, before Oma Lee Cox can recover in this case, she must establish by a preponderance of the evidence that her injuries received in this upset were due to some act or acts of willful and wanton misconduct on the part of her host, the defendant, Harkrider."

The jury therefore, was plainly told that recovery was predicated upon willful and wanton misconduct or disregard on the part of Harkrider, and this requirement was reiterated in Instructions 19 and 20. The latter reads as follows:

"You are told that even though you believe from a preponderance of the evidence that the defendant driver was guilty of gross negligence in the operation of his vehicle — that degree of negligence would not of itself entitle plaintiff Oma Lee Cox to recover. Oma Lee Cox must go further and show by a preponderance of the evidence that Harkrider persisted in a course of conduct which to the knowledge of an ordinarily prudent person would naturally or probably result in injury."

Appellant's contention is held to be without merit.

Instruction No. 11 told the jury that they could not speculate on the issue of negligence or any degree thereof. Appellant states:

"Willful and wanton disregard has often been described by this Court as greater than any degree of negligence. Therefore, this instruction concerning negligence and degrees thereof is abstract law, misleading, and erroneous. We are not dealing with negligence or any degree thereof. We are dealing with willful or wanton misconduct."

We do not agree that willful and wanton disregard or misconduct is an area, or field, of law entirely distinct and apart from negligence. Our previous opinion several times mentions "willful and wanton negligence". "Willful and wanton negligence" and "willful and wanton disregard" are synonymous in meaning, and as stated in the previous paragraph, the court properly instructed the jury in this regard.

Instructions 12, 13, 14, and 14½ all deal with "rules of the road", and were proper instructions. Appellant states:

"The jury should have been advised, in accordance with defendant's request, in each rule-of-the-road instruction, that plaintiff would not be entitled to recover unless the jury found that the defendant was guilty of willful and wanton disregard for the consequences of his acts when violating any rule of the road."

We reiterate that the "willful or wanton" feature was covered in the instructions heretofore set out. The same is true with regard to appellant's Requested Instruction No. 1.

Finally, appellant argues that the judgment for the benefit of Oma Lee Cox was excessive.[2] The testimony on this point reflected that she was hospitalized for seven

---

[2] The judgment given in the first trial was $3,000. Appellant makes no argument that the present judgment in favor of the father, in the amount of $625, was excessive.

days after the accident; after returning home, she stayed in bed most of the time for a week, and returned to school after about two weeks; that she constantly complained of pain in her head and back; she has been very nervous since the accident, and is upset by riding in an automobile; that she has headaches for three or four days at a time. Mr. Cox testified that Oma Lee was unconscious from Saturday morning until Tuesday morning, and further testimony reflected that the girl received cuts on her forehead, across her nose, over the eye, on each side of her jaw, and on her tongue. Mrs. Cox, the mother, testified that her daughter's legs were "swollen clear over her shoes", and that Oma was not able to help with household work; that the daughter is unusually nervous, and will "cry about anything"; two teeth were chipped and capped. Dr. Charles D. Yohe of Hot Springs, a psychiatrist, testified that he examined Miss Cox on two occasions (July 15, 1959, and September 21, 1959). The witness stated that on the first occasion he held a general exploratory interview, and gave a neurological examination. He also gave the Bender-Gestaldt test. On the second occasion, he gave the Stanford-Binet, the Revised Stanford-Binet, and the Rorschach test. The witness stated that on her first occasion, Miss Cox was pleasant and cooperative, but had little to say. "She was rather empty, vapid * * * her responses to most any question or subject were inadequate, apathetic, disinterested, et cetera. She didn't seem to grasp adequately most of the subjects brought up." He stated that the Bender-Gestaldt test was highly suggestive of organic brain damage, and the additional testing was subsequently performed. The doctor then testified: "It is quite apparent from the findings I have here that there is definite organic brain damage, and that her intelligence is at present that of a moron; that her mental capacity and intelligence has been reduced to 74." He then explained that IQ test scores of 50 to 75 are generally referred to as scores of a moron, and that general intelligence is in the area of from 90 to 100. Further, "it also could be stated that the pattern of her test scores were those typical for organic deterioration of intelli-

gence. By that I mean it is very suggestive that once her intelligence was higher, and that it has been reduced to its present level.'' Dr. Yohe then stated that, in his opinion, this was a permanent condition, but if there should be any change, ''it would be in a downward direction, rather than in an upward direction.'' The doctor was firmly of that view, despite the fact that on cross-examination, it was developed that the young lady's school grades were substantially the same after the accident, as before. He testified that injuries producing several days of unconsciousness are very often associated with permanent reduction in intelligence. The witness stated that it was fortunate that Miss Cox had already had considerable education prior to the accident, because, in his opinion, her peak of education has been reached. Based on information that he had obtained concerning the mentality of Miss Cox, prior to the collision, including an IQ test given the young lady sometime during the year preceding the crash (wherein she made a score of 96), it was the opinion of Dr. Yohe that the injuries sustained in the wreck were the cause of the reduction in mental capacity.

Dr. William I. Porter, a neurosurgeon of Little Rock, testified that he could find nothing abnormal about Miss Cox's legs or hands, and found no evidence of any brain damage. He further stated that he could not detect any gross deficits in her mental function, and considered her alert and cooperative. He found nothing to indicate that the girl was a moron, though admittedly, he did not give the tests referred to. The doctor was obviously of the opinion that some of the tests were of little value in determining whether one had suffered a brain injury. He found no evidence of injury to the spinal cord or nerves, but did mention the scars which Miss Cox had shown the jury. Dr. Porter indicated that these might be ''smoothed out'' by careful plastic surgery. He testified that she did receive a severe cut on her tongue, but that the tongue had healed, and was not, in any manner, deformed. The doctor was unable to say whether the headaches complained of could be traced to the injuries received in the collision, but did state that

he found no nerve or tissue damage to the brain, and was of the opinion that Oma Lee received no permanent injury to the brain at the time of the collision.

It is not for us to say which diagnosis was correct. That question was properly one to be considered by the jury. As was stated in *Arkansas Power and Light Company* v. *Mart,* 188 Ark. 202, 65 S. W. 2d 39:

"It is contended also that the verdict of the jury is excessive. The evidence is in conflict as to the extent of appellee's injuries. The jury may have believed the evidence of appellee's witnesses, and, if so, it was justified in returning the verdict it did. This was a question of fact which was the province of the jury to determine, and as we have many times said, although we might not agree with the jury, yet if there was any substantial evidence to sustain its verdict, we are not authorized to disturb it. In other words, the jury is the judge of the facts, and we cannot substitute our judgment of the facts for the judgment of the jury."

Likewise, we have, on innumerable occasions, held that in determining the sufficiency of the evidence to support a verdict, such evidence must be viewed, with every reasonable inference arising therefrom, in the light most favorable to appellee. *Missouri-Pacific Railroad Company* v. *Dotson,* 195 Ark. 286, 111 S. W. 2d 566. The evidence on behalf of appellee, if believed by the jury, was sufficient to sustain the verdict.

Finding no reversible error, the judgment is affirmed.