**Juanita DeShazo BILLINGSLEY, Administratrix of the Estate of Joe W. Billingsley, deceased, Plaintiff,**

v.

**WESTRAC COMPANY and Donald Earl Adams, Defendants.**

Civ. A. No. 921.

United States District Court
W. D. Arkansas,
Texarkana Division.

Oct. 15, 1965.

Shaver, Tackett & Jones, Texarkana, Ark., for plaintiff.

John O. Moore, Texarkana, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

In this action commenced April 9, 1965, plaintiff seeks to recover damages for the alleged wrongful death of Joe W. Billingsley growing out of a collision. Plaintiff, Juanita DeShazo Billingsley, is the widow and duly appointed Administratrix of the Estate of Joe W. Billingsley, deceased, and is a resident of Sevier County and a citizen of Arkansas. The defendant Westrac Company is a Pennsylvania corporation with its principal place of business in California. The individual defendant, Donald Earl Adams, an employee of Westrac, is a citizen of the State of Washington. Jurisdiction exists by reason of diversity of citizenship of the parties and the amount involved, 28 U.S.C.A. § 1332(a), (1964 Supp.).

The collision between the tractor-trailer of Westrac, driven by Donald Earl Adams, and the Chevrolet El Camino driven by Joe W. Billingsley occurred approximately 12½ miles west of Benton, Arkansas, on Highway 70 at approximately 5:30 a. m. on March 3, 1965. At the place of impact the highway runs in a generally east-west direction. The deceased was traveling west toward Hot Springs, Arkansas. The tractor-trailer, which had been traveling west, was across the highway in a generally north-south position. The tractor was partially in a driveway on the north side of the highway and the trailer was completely across the highway blocking it.

The plaintiff alleged that the defendant Westrac, acting through its servant and employee, and Donald Earl Adams personally were negligent, as follows:

1. Driving and operating the tractor-truck-trailer unit across the highway, blocking and obstructing traffic upon the highway.

2. Failing to keep a proper lookout for other vehicles on the highway.

3. Failing to use due care and caution in the operation of the vehicle and failing to abide by the traffic laws, rules and regulations governing the use of highways by drivers of motor vehicles.

4. Failing to yield the right of way to the pickup truck being properly operated by Joe W. Billingsley in his proper lane of said highway.

She denied that the deceased was guilty of any negligence, and further alleged that as a proximate and direct result of the alleged negligent acts of the defendants, the deceased received injuries which resulted in his death. Following these allegations, the plaintiff specifically alleged the nature and extent of the damages suffered by the estate and the heirs at law of the deceased.

The defendants in their answer filed May 3, 1965, denied any negligence on their part but admitted that Donald Earl Adams was acting within the scope of his employment at the time of the accident. The defendants further alleged that the negligence of the deceased was the proximate cause of the accident which resulted in his death, and alleged the following specific acts:

1. That he was operating his vehicle at an excessive rate of speed.

2. That he failed to maintain a proper lookout for other vehicles on the highway.

3. That he failed to keep his vehicle under proper control.

4. That if Billingsley discovered that he was entering into a situation of peril in time to have avoided the accident by the use of reasonable and ordinary care in the management and operation of his own vehicle, he negligently failed to exercise such care to that end.

The defendants prayed that the complaint of the plaintiff be dismissed or, in the alternative, that should the court find defendants guilty of negligence which was a proximate cause of the accident, that the negligence of the deceased, Joe W. Billingsley, be compared

with the negligence of the defendants and that any award be diminished in proportion to the negligence of the deceased which contributed to and was a proximate cause of the accident.

On September 23, 1965, the case was tried to the court without the intervention of a jury, and at the conclusion thereof was submitted subject to the receipt of briefs submitted by the parties. The briefs in support of the parties' respective contentions have been received and considered, along with the evidence adduced at the trial, and this opinion, containing the findings of fact and conclusions of law, is filed as authorized by Rule 52(a), Fed.R.Civ.P.

United States Highway 70 at the point of the collision is flat and straight, and, as heretofore stated, runs in a generally east and west direction. The paved travel portion of the highway at that point is 24 feet wide and the asphalt shoulders are 10 feet wide. The highway east of the point of impact is straight for a distance of 900 feet. It then begins a gradual curve to the south. The curve is 800 feet in length, and a vehicle approaching the point of impact from the east traveling west has a clear and unobstructed view of the point of impact when it is midway of the curve or 400 feet in the curve. In other words, the driver of a vehicle approaching the point of impact, as was the deceased, has a clear and unobstructed view of the highway at the point of impact when he is 1300 feet from said point of impact.

The defendant driver, Adams, destined for Texarkana, Arkansas, had mistakenly taken Highway 70 out of Benton, Arkansas. At some place prior to approaching the place where the accident occurred, the driver had determined he was on the wrong road and began looking for a place to turn his vehicle around. Adams had driven into a gravel driveway on the north side of the highway and was in the process of turning the tractor and trailer around when the deceased crashed into the dolly portion on the right side of the trailer. The entire length of the tractor and trailer was approximaely 53 feet. At the time of the collision the tractor trailer extended across the shoulders and the travel portion of the highway.

The deceased, prior to the collision, on March 3, 1965, left an apartment at 5:00 a. m. on Louisiana Street in Little Rock, Arkansas. Although it had been raining earlier in the morning the highway was dry at the time of the collision. Just prior to the collision the deceased had passed other vehicles traveling west. The driver of one of these vehicles testified without contradiction that the deceased had passed him and two other vehicles that were traveling rather closely. At the time the deceased passed the witness, the witness was traveling at a speed of 65–70 miles per hour. The witness and others traveling in the same direction as the deceased, upon reaching the middle of the curve east of the point of impact observed the lights and tail lights of the vehicles at the place of impact. Another witness approaching from the west traveling east on the highway also observed the lights on the trailer as it was backing out of the gravel driveway. This witness saw the lights of the deceased's vehicle as it came from the east immediately prior to the collision. An Arkansas State Trooper traveling from the east arrived at the scene 30 minutes after the collision while the highway was still in total darkness and observed the lights on the trailer and other lights at the place of impact when he reached the middle of the curve, which was 1300 feet east of the place of impact.

The driver of the tractor-trailer had left Danville, Illinois, sometime in the evening of March 2. He stopped in Memphis, Tennessee; slept approximately three hours; and left Memphis around 12 midnight. While in the process of turning his vehicle around by pulling into the driveway and then beginning to back out, Adams observed the deceased's automobile prior to its striking the tractor-trailer. The defendant Adams had placed no warning lights or other signals in the highway to warn motorists although it was completely dark. His vehicle at the

time of the collision had the highway completely blocked.

■ The court is of the opinion that the defendants were guilty of negligence in the operation of the tractor-trailer which was a proximate cause of the accident which resulted in the death of Joe W. Billingsley, in attempting to turn the tractor-trailer around in the highway in such a manner as to obstruct the highway after having failed to take any precaution to warn oncoming motorists of the hazard created. These acts and omissions on the part of the defendant Adams constituted negligence which was a proximate cause of the collision that resulted in the death of Joe W. Billingsley.

■■ The deceased was driving at an excessive rate of speed. He was exceeding the speed limit, 60 miles per hour, and was traveling at an excessive rate of speed for nighttime driving. Skid marks of the deceased's vehicle showed he skidded 43 feet prior to striking the tractor-trailer. A driver of a motor vehicle has an affirmative duty to anticipate other vehicles upon the highway and to keep a lookout for them and operate his vehicle at such a speed and under such control that he may stop it or turn it to avoid colliding with any other vehicle. See Sunday v. Burk (W.D.Ark.1959), 172 F. Supp. 722. The requisite conduct of an operator of a motor vehicle is accurately stated in Kelly v. United States (W.D.Ark.1964), 230 F.Supp. 118, at page 124:

"In Yocum v. Holmes, (1953) 222 Ark. 251, 258 S.W.2d 535, the court quoted from the case of Northwestern Casualty & Surety Co. v. Rose (1946), 185 Ark. 263, 46 S.W.2d 796, and at page 256 of 222 Ark., at page 538 of 258 S.W.2d said:

" 'It is the well-settled rule that the duty rests upon the driver of an automobile to exercise ordinary care in its operation and in the exercise of such care it is his duty to keep a constant lookout to avoid injury to others.'

"A driver of an automobile must exercise a degree of care commensurate with the dangers anticipated and the injuries that are likely to result from the driving of the automobile. The more dangerous the character of the vehicle, of course, the greater the degree of care required. Bona v. S. R. Thomas Auto Co. (1919), 137 Ark. 217, 208 S.W. 306."

The rules of the road of the State of Arkansas provide:

"Sec. 75–601. Speed Restrictions. —(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing.

\* \* \* \* \* \*

" \* \* \* however, in no event shall a motor vehicle be driven upon a highway of the State of Arkansas at a speed which would not be reasonable and prudent under the conditions then existing, but in no event shall motor vehicles be driven upon the highways of the State of Arkansas at a rate of speed greater than the following:

1. Passenger vehicles sixty (60) miles per hour."

■ Had the deceased been operating his vehicle in the manner set out above, and particularly keeping an efficient lookout, he could and would have seen the tractor-trailer in time to have stopped his vehicle by the exercise of ordinary care in time to avoid striking the tractor-trailer. The evidence conclusively establishes that the lights on the trailer were visible a distance of 1300 feet east of the point of impact. Other parties traveling the highway immediately after the collision observed them that distance, and were able to bring their vehicles under proper control and stop short of the place of impact.

■■ In Cobb v. Atkins (1965), 239 Ark. 151, 388 S.W.2d 8, the court, in discussing the duty of an operator of a motor vehicle to keep a lookout, at page 153

of 239 Ark., at page 10 of 388 S.W.2d stated:

"We like what the Supreme Court of Iowa has said concerning a proper lookout in automobile cases. In Mueller v. Roben [248 Iowa 699], 82 N.W.2d 98, the Iowa Court said:

" 'With reference to motor vehicle operation "lookout" is that watchfulness which a prudent and reasonable person must maintain for his own safety and the safety of others, taking into consideration the circumstances with which he is immediately concerned or confronted.' In Ehrhardt v. Ruan [Transport Corp., 245 Iowa 193], 61 N.W.2d 696, the Iowa Court said:

" ' * * * proper lookout means more than to look straight ahead, or more than seeing the object; that it implies being watchful of the movements of his own vehicle as well as the movements of the things seen; that it involves the care, prudence, watchfulness and attention of an ordinarily careful and prudent person under the circumstances.' "

Notwithstanding the fact that the defendant driver was negligent in creating the hazard, yet had the deceased exercised ordinary care in the operation of his automobile and had he kept an efficient lookout, he could have without doubt stopped his vehicle short of the place of impact and avoided the collision. The court is of the opinion that the deceased was guilty of contributory negligence in (a) driving in excess of the speed limit; (b) driving at an excessive rate of speed under the circumstances then existing—darkness; (c) in failing to keep a proper lookout for other vehicles upon the highway; and (d) in failing to bring his vehicle under proper control when he could have avoided the accident by the exercise of ordinary care. These acts and omissions on the part of the deceased constituted contributory negligence which was a proximate cause of the collision which resulted in his death.

■ The defendant Adams chose the place to turn his vehicle around which provided sufficient distance for other motorists to see his vehicle and stop. The Arkansas statutes require placing of warning signals or lights when a disabled vehicle creates a hazard to motorists using the highway. The court cannot say that the defendant had any duty to set out any warnings or signals as the vehicle was not disabled within the meaning of the statute, and it appears that oncoming motorists had sufficient distance in which to observe and stop. The defendant had a right to assume that other motorists using the highway would observe the traffic laws and regulations, including driving at a reasonable rate of speed and keeping a proper lookout. The fact that the vehicle approaching from the west traveling east observed the defendant's tractor-trailer immediately prior to the deceased's collision with it and had sufficient time and distance to stop is evidence of the defendant's having chosen a place to turn around which was reasonable and prudent.[1] Likewise other

1. Excerpt from testimony of Vasco Cunningham. (TR 77–79)

Q. Were you on the road between Hot Springs and Benton on the morning of March 3rd?
A. Yes, sir.
Q. What direction were you traveling?
A. East.
Q. You were headed to what city?
A. Memphis.
Q. You were going then from Hot Springs to Benton?
A. Yes, sir.
Q. About twelve and one-half miles or so out of Benton what did you see, if anything?
A. I saw a tractor-trailer across the road.
Q. What time of day was that?
A. I estimate it about 5:30.
Q. What called your attention to the fact that there was a tractor-trailer across the road?
A. I saw a red light flashing on the rear of the tractor.
Q. What was the size of that light, if you know?
A. I would say it was a light about that big (indicating with his two hands).
Q. Was it oscillating or just blinking or what was it doing?
A. It was blinking.

motorists traveling west and at approximately the same time as the deceased observed the defendant's tractor-trailer some 1300 feet and had ample opportunity to bring their vehicles under control and stop them short of the place of impact.[2] The photographic exhibits introduced by the parties demonstrate that the deceased's vehicle struck the trailer portion of defendant's vehicle with such force that the front portion of the deceased's vehicle was driven back across the front seat, and the vehicle was almost completely rammed under the trailer.

Ark.Stat.Ann., Sec. 27–1730.1 (1962 Repl.) provides:

"Contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of less degree than the negligence of any person, firm, or corporation causing such damage."

Sec. 27–1730.2 provides:

"In all actions hereafter accruing for negligence resulting in personal injuries or wrongful death or injury to property, contributory negligence shall not prevent a recovery where any negligence of the person so injured, damaged, or killed is of less degree than any negligence of the person, firm or corporation causing such damage; provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence."

The deceased's failure to keep a proper lookout and his excessive speed under the circumstances were the efficient acts which caused the impact that resulted in his death. The court cannot say, however, that the deceased's acts of negligence were the sole proximate cause. The defendant initially created the situation, that is, obstructing the highway. The deceased, however, could have completely avoided the mishap had he either kept an efficient and proper lookout or had not been driving at an excessive rate

Q. How far away from this truck were you at the time you first observed it?
A. I estimate it from six to seven hundred feet.
Q. Six to seven hundred feet?
A. Yes, sir.
Q. What were the weather conditions?
A. It had been raining early in the night and this was about 5:30 in the morning. I would say the highway was dry.
Q. The highway was dry?
A. Yes, sir. It was cold.
Q. When you first observed this light blinking, what did you do, if anything?
A. I started slowing down. I thought it was an officer had someone pulled off. I could see the light blinking. My first impression of it. And then a few feet further, I don't know how long, I saw this tractor across the road, so I started slowing down.
Q. Immediately prior to when you first observed this tractor-trailer, the light flashing, at what speed were you traveling?
A. Between fifty and sixty.
Q. Did you have any trouble after you saw this red light flashing, did you have any trouble stopping?
A. When I saw the red light I started slowing down, then when I saw the trailer I started stopping.
Q. How far from the trailer did you stop?
A. About thirty-five or forty feet.
Q. Was the trailer blocking the highway?
A. Yes, sir, it was.

2. Excerpt from testimony of William Louis McClure. (TR 59)
Q. When you rounded this curve what did you observe, if anything?
A. I saw the tail lights of this El Camino and also the tractor-trailer lights. And I knew that it was an accident ahead. I had plenty of time to stop, and I did stop, and jumped out and ran over there.
Q. Describe to the court how many lights were on this rig.
A. There were three lights on the trailer, five lights on the cab of the tractor, and the blinking lights were on on the truck.
Q. Were the headlights on?
A. Yes, sir.
Q. Mr. McClure, how far back would you estimate you were when you rounded the curve when you first observed something up ahead?
A. I could see a good quarter of a mile myself. It was a good quarter of a mile.

of speed under the circumstances. The crucial acts, which as a proximate cause resulted in the collision, were the negligent acts of the deceased. The essential element of the duty to keep a lookout is to drive in anticipation of the possibility of vehicles or persons in the roadway ahead and at a rate of speed, under the conditions existing, that will allow the operator to stop or slow his vehicle in order to avoid colliding with other vehicles or persons. The posted speed limit is the legal maximum speed which a motorist may travel under the best conditions. The legal maximum speed presumes a dry highway and unobstructed visibility.

The evidence establishes, and the court is convinced that the negligence of the deceased was equal to or exceeded that of the defendants. Therefore, a judgment is being entered today for the defendants, and the complaint of the plaintiff will be dismissed, as the contributory negligence of the deceased was equal to or exceeded that of the defendants and was a proximate cause of the accident which resulted in his death.