Juanita DeShazo **BILLINGSLEY**, Administratrix of the Estate of Joe W. Billingsley, Deceased, Appellant,

v.

The **WESTRAC COMPANY** and Donald Earl Adams, Appellees.

No. 18247.

United States Court of Appeals Eighth Circuit.

Sept. 9, 1966.

W. Lee Tucker, Benton, Ark., for appellant; Ted Boswell and Hall, Purcell, Boswell & Tucker, Benton, Ark., on the brief.

John O. Moore, Texarkana, Ark., for appellees.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

BLACKMUN, Circuit Judge.

Joe W. Billingsley died as a result of injuries sustained when, in the darkness at about 5:30 on the morning of March 3, 1965, the new one-half ton truck he was driving smashed into a tractor-trailer straddling U. S. Highway 70 about twelve and a half miles west of Benton, Arkansas.

The decedent's widow, as administratrix of his estate, instituted this wrongful death diversity action against Westrac Company, the owner of the tractor-trailer, and Donald Earl Adams, its driver and their employee. The suit rests on alleged negligence of Adams. Negligence on the part of the decedent is pleaded as a defense.

The case was tried to the court without a jury. Judge Miller found that Adams was negligent; that his negligence was a proximate cause of the collision; that, however, the decedent was contributorily negligent; that his contributory negligence was a proximate cause of the collision and constituted the "efficient" and "crucial acts"; and that the negligence of the deceased was equal to or exceeded that of Adams. The court concluded consequently that, under the Arkansas comparative negligence statutes, Ark.Stat. Ann. §§ 27–1730.1 and 27–1730.2 (1962 Repl.),[1] the plaintiff was not entitled to

1. § 27–1730.1. Contributory negligence not a bar to recovery where less than negligence of person causing damage.—Contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of less degree than the negligence of any person, firm, or corporation causing such damage.

§ 27–1730.2. Contributory negligence as diminishing recovery.—In all actions hereafter accruing for negligence resulting in

recover. D.C., 246 F.Supp. 356. Judgment was entered dismissing the complaint. The administratrix appeals.

The facts are in no significant dispute. Adams was driving westwardly to Texarkana and the West Coast. He had left Illinois the night before, had stopped at Memphis where he slept about three hours, and had departed from Memphis around midnight. Just west of Benton he missed the continuation of U. S. Highway 67 southwest to Texarkana. Instead, he continued on Highway 70 west toward Hot Springs. In due course he discovered his error. He pulled his rig north into a private driveway and then, in an attempt to turn around so as to return to the cutoff to Texarkana, backed out across the highway. With the unit thus positioned, Billingsley, also coming from the east, smashed into and under the dolly portion of the tractor-trailer and sustained the injuries which proved fatal.

The highway at the scene of the accident is 24 feet wide and has a 10 foot shoulder on each side. The unit was 53 feet long and was blocking both traffic lanes and shoulders. Billingsley's skid marks extended only 43 feet to the east. The highway at the collision point is flat and runs straight east for 900 feet and then begins a gradual curve 800 feet in length to the southeast. A driver approaching from the east has a clear view of the point of impact when midway in this curve or for a total of 1300 feet. Arkansas has a "reasonable and prudent under the conditions" speed standard with a stated maximum for the decedent's vehicle of 60 miles per hour. Ark.Stat. Ann. § 75–601 (Supp.1965).

The record contains evidence that Billingsley left Little Rock about five o'clock that morning bound for his home in De-Queen, Arkansas, west of Hot Springs; that he stopped to pick up a hitch-hiker; that the distance between his point of departure in Little Rock and the scene of the accident was 35 miles; that the highway then was dry; that on his way Billingsley had passed other vehicles also traveling west and did so at a speed in excess of 65 miles per hour; that a witness traveling the highway from the west observed the lights on the trailer as it was backing out of the driveway and brought his vehicle to a stop; and that Adams placed no warning lights or other signals on the highway prior to his backing.

Judge Miller found negligence on the part of Adams, while attempting to turn around, in his obstructing the highway without warning precautions to oncoming motorists (although, because the truck was not disabled, he found Adams had no duty, under Ark.Stat.Ann. § 75–722 (B) (Supp.1965), to set out flares or signals). He found negligence on the part of Billingsley in his speed in excess of the statutory maximum, in his travel "at an excessive rate of speed for night-time driving", in his failure to maintain a proper lookout, and in his failure to have his vehicle under proper control.

■ Inasmuch as the accident occurred in Arkansas the substantive law of that state is controlling here. Walton v. Eckhart, 354 F.2d 35, 37 (8 Cir. 1965); Sloan v. Tarlton, 285 F.2d 575, 576 (8 Cir. 1961).

The plaintiff first asserts that the record shows that Adams was guilty of "willful and wanton negligence" and that such is not subject to comparison, under the Arkansas comparative negligence statutes, with any ordinary negligence of the decedent. It is argued that willful negligence is the same as gross negligence ("the failure to use even slight care", Spence v. Vaught, 236 Ark. 509, 367 S.W.2d 238, 240 (1963)) with the added factor of knowledge or assumed knowledge that the act or failure to act

personal injuries or wrongful death or injury to property, contributory negligence shall not prevent a recovery where any negligence of the person so injured, damaged, or killed is of less degree than any negligence of the person, firm or corpo-

ration causing such damage; provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence.

will probably cause harm. Willfulness is then claimed to exist here in the facts of Adams' backing in the dark so as completely to block the highway and his doing so without warning flares, with the trailer's side clearance lights obscured by road film, and with an awareness of Billingsley's approach from the east. It is contended that Adams' actions created a trap for an unwary night driver and present a situation of more than ordinary or even gross negligence. Cited as supporting authority are 4 Blashfield, Automobile Law & Practice 353 (Perm. Ed.); Leflar, The Declining Defense of Contributory Negligence, 1 Ark.L.Rev. 1, 5 (1946); Restatement (Second, Torts §§ 482(1), 500 and perhaps 503(1) (1965); St. Louis I. M. & S. Ry. v. Freeman, 36 Ark. 41, 50 (1881);[2] and Ellis v. Ferguson, 238 Ark. 776, 385 S.W.2d 154, 155 (1965).[3]

We note, initially, that this charge of willful and wanton conduct on Adams' part was neither specifically pleaded nor urged in the trial court. This would entitle us to dispense with any consideration of the argument here. Arkansas Valley Feed Mills, Inc. v. Fox De Luxe Foods, Inc., 273 F.2d 804, 809 (8 Cir. 1960); Andrews v. Olin Mathieson Chem. Corp., 334 F.2d 422, 425 (8 Cir. 1964). Nevertheless, we are willing in this case to examine the merits.

The plaintiff, in order to prevail on this approach, must establish, first, that Adams' conduct can be characterized as willful and wanton and, second, that, as such, it is beyond the reach of the Arkansas comparative negligence statutes. We are not satisfied that the plaintiff has established either proposition.

We do not attempt to defend or justify Adams' method of maneuvering his rig that March morning. The tragic consequences speak for themselves. We cannot say, however, that what Adams did was, as a matter of law, of so degenerate a standard as to qualify as something more grave than negligence or gross negligence. That he was not in the exercise of due care has been established and is not now controverted. But Adams was in unfamiliar territory. He had missed his road. His desire to reverse his direction and get back to the Texarkana cutoff was appropriate and understandable. He chose, as a place to turn in generally hilly country, a spot where the road was level and straight for 300 yards and was observable from the east for more than 100 additional yards. Although Adams acknowledged his awareness of the decedent's approach, he testified that Billingsley was "a good half a minute" and "over a quarter of a mile" away. At the maximum statutory speed this distance afforded at least 15 full seconds prior to impact. At the time, Adams was already in the process of turning and in the 15 second period, with the rig moving backward, his headlights would become visible to the approaching Billingsley. Also, for what it is worth, other drivers coming from the east saw the pileup and were able to stop. Adams may have been guilty of a mistake of judgment and what he did was indeed a negligent act, as the court has found. But we do not view the facts as supportive of a determination that what he

---

**2.** "The doctrine of contributory negligence has no place where there is not negligence on both sides * * * Its scope does not extend * * * to allow defendant to inflict a wanton or careless injury. It would be extending it too much, we think, to make it a defense to a general and reckless disregard of human life, by running cars without any care as to whom or what they might hurt."

**3.** "It is equally well settled that one who willfully and wantonly, in reckless disregard of the rights of others, by a positive act or careless omission exposes another to death or grave bodily injury, is liable for the consequences, even if the other was guilty of negligence or other fault in connection with the causes which led to the injury. It is not necessary to prove that the defendant deliberately intended to injure the plaintiff. It is enough if it is shown that, indifferent to consequences, the defendant intentionally acted in such a way that the natural and probable consequence of his act was injury to the plaintiff."

did was malicious or willful or wanton or in reckless disregard of the rights of other travelers.

Even if Adams' act could be characterized as willful and wanton, one must still reckon with the Arkansas comparative negligence statutes. The theory advanced by the plaintiff has not been applied by the Arkansas Supreme Court with specific reference to these statutes. We recognize that it has been said that willful misconduct is not, properly speaking, within the meaning of the term "negligence". 38 Am.Jur. Negligence §§ 48, 178 (1941). We feel, however, that the Arkansas court's approach to the state's guest statutes, Ark.Stat.Ann. §§ 75–913 and 75–915 (Repl.1957), which antedated the comparative negligence ones, is significant. These guest statutes contain language of "wilfully and wantonly operated" (§ 79–913) and of "wilful misconduct" (§ 75–915), and do not use a negligence term. The Arkansas opinions, nevertheless, draw no distinctions because of this. Instead, almost casually and yet with seeming purpose, they relate these terms to negligence and use them in a negligence frame of reference.

Repeatedly and consistently, in many opinions, both majority and dissenting, written by various members of the court, the statutory language is equated with "willful and wanton negligence", or some other negligence phraseology. See, for example, Froman v. J. R. Kelley Stave & Heading Co., 196 Ark. 808, 120 S.W.2d 164, 167 (1938); Splawn v. Wright, 198 Ark. 197, 128 S.W.2d 248, 250 (1939); Edwards v. Jeffers, 204 Ark. 400, 162 S.W.2d 472, 473, 474 (1942); McAllister v. Calhoun, 212 Ark. 17, 205 S.W.2d 40, 42 (1947); Cooper v. Calico, 214 Ark. 853, 218 S.W.2d 723, 726 (1949); Scott v. Shairrick, 225 Ark. 59, 279 S.W.2d 39, 42 (1955); Harkrider v. Cox, 230 Ark. 155, 321 S.W.2d 226, 227, 229, 233 (1959); Cousins v. Cooper, 232 Ark. 605, 339 S.W.2d 316, 318 (1960); Stobaugh v. Hubbard, 234 Ark. 917, 355 S.W.2d 283, 285 (1962); Spence v. Vaught, supra, pp. 241 and 242 of 367 S.W.2d; Fitzgerald v. Allyn, 237 Ark. 187, 372 S.W.2d 228, 229, 230 (1963); Tiner v. Tiner, 238 Ark. 222, 379 S.W.2d 425, 431, 432 (1964); see Hale v. American Fire & Cas Co., 81 F. Supp. 273, 274 (W.D.La.1948); cf., however, Mr. Justice McFaddin's dissent in the comparatively early case of Cooper v. Calico, supra, p. 727 of 218 S.W.2d.

The Arkansas court in the guest statute context thus clearly associates willful conduct with a degree of negligence and does not regard it as something over and beyond or apart from a negligence concept. Any doubt about this appears to be resolved by the court's statement in Harkrider v. Cox, 232 Ark. 165, 334 S.W. 2d 875, 877 (1960):

> "We do not agree that willful and wanton disregard or misconduct is an area, or field, of law entirely distinct and apart from negligence. Our previous opinion several times mentions 'wilful and wanton negligence'. 'Wilful and wanton negligence' and 'wilful and wanton disregard' are synonymous in meaning, * * *."

■ We therefore are persuaded that the Arkansas comparative negligence statutes will be similarly applied when the State's Supreme Court has occasion to examine them in the face of a charge of willful and wanton misconduct. In any event, we are not now convinced that the law of the state is otherwise. We note, too, the added factor that the purpose of a comparative negligence statute is thwarted whenever there is a judicial characterization of an act as something other than negligence.

■ The plaintiff's second point is that, in any event, if Adams' conduct may be compared with that of the decedent, then the trial court was clearly erroneous in finding that the decedent's negligence was equal to or greater than Adams'. We are not so convinced. The decedent's speed, found to be in excess of both the statutory limit and that which was reasonable for the prevailing conditions; his failure to observe the presence of the rig, despite the darkness, with an unobstructed field of 1300 feet; his failure, as indi-

cated by the skid marks, to attempt to stop his vehicle until he was within 43 feet of the trailer; and his having traversed the entire distance from Little Rock, including a stop for a hitchiker, at an average speed of at least a mile a minute, adequately support the trial court's findings and conclusions on the issue of comparative negligence under the statutes of Arkansas. See Kirkland v. Danna, 143 So.2d 137 (La.App.1962).

This was a tragic accident and one of the many which are all too common in this day. We are not persuaded, however, that the trial court's considered findings and conclusions merit reversal.

Affirmed.

GIBSON, Circuit Judge (dissenting).

Respectfully, I must dissent. I am prompted to dissent because I take a much more critical view of the activities of Donald Adams, the driver of the tractor-trailer truck, than does the majority. Though I appreciate Judge Blackmun's fine analysis of the Arkansas comparative negligence statutes, I am not convinced that the majority's application of the facts of this case to that law is correct.

Truck driver Adams was well aware that he was being followed by another vehicle. With this knowledge and in the dark of the early morning hours Adams proceeded to completely block a busy Federal highway with his dirt caked 53-foot truck. Absolutely no room was left for approaching automobiles to by-pass the tractor-trailer unit on the 24 foot roadway and the 10 foot shoulders. Adams apparently expected approaching motorists to see the side of his truck, come to a complete stop, and wait for him while he proceeded with the slow process of turning around his bulky rig. Whatever label one may choose to attach to Adams' willful act of blocking the

highway, to me it represents the absolute summit of inconsiderate driving, and, approaches the maximum level of grossly negligent conduct, bordering on criminal misbehavior. It indicates a callous and wanton disregard for the safety of the traveling public, which I, only with difficulty, can imagine an equal. No doubt Adams needed to turn around. Yet the duty was upon him to turn around without endangering the lives of fellow motorists. His complete failure to discharge this duty cannot be justified by the argument that he could have turned around in an even more dangerous location. The fact remains that this dark and dimly lighted truck stretched across a gray-black topped highway was a potential death trap for all but the most prudent of drivers.

Even accepting that the deceased was in fact exceeding the speed limit at the time of the collision and that he kept less than an adequate lookout (which facts are only supported by less than overwhelming inferences), his negligence to me, does not approach the degree of willful misconduct evidenced by Adams. I am not convinced that the willful and wanton acts of Adams carried out with utter disregard of the rights and lives of others driving on their proper side of the highway can be or should be equated with ordinary negligence, or is even applicable to the comparative negligence concept.

However, assuming for the purpose of discussion only that the Arkansas comparative negligence doctrine is applicable to the factual context of this case, I feel the trial court erred as a matter of law in equating the somewhat speculative and ordinary negligence of deceased with the clear, obvious, and in my mind, grossly negligent misconduct of Adams.

For that reason I would reverse the judgment of the trial court, and remand for a new trial.