TINER v. TINER

5-3231                                        379 S. W. 2d 425

Opinion delivered June 1, 1964.

*Jay W. Dickey, Jr., and Jay W. Dickey,* for appellant.

*Paul B. Pendleton, Coleman, Gantt, Ramsay & Cox and Bridges, Young & Matthews,* for appellee.

Ed. F. McFADDIN, Associate Justice. This litigation stems from a traffic collision between a car driven by appellant, Berlin Tiner, and a car driven by A. R. Merritt. In the collision four of the children in the Berlin Tiner car were killed and one was permanently injured. Three of those fatally wounded were children of Berlin Tiner and his divorced wife, Alma Jean Tiner; the fourth fatally wounded child was Berlin Tiner's niece, Linda Tiner; and the permanently injured child was Berlin Tiner's nephew, Charles Tiner, Jr. Both Linda Tiner and Charles Tiner, Jr. were the children of Mr. and Mrs. Charles Tiner, Sr. Two separate actions were filed as a result of the traffic collision and in each case there were interventions, all of which matters will be subsequently described. Both cases were consolidated and tried in the Jefferson Circuit Court and resulted in verdicts against Berlin Tiner, who prosecutes the present appeal. The points presented on appeal are complicated by a variety of other issues which appear to have been settled, but a rather detailed statement of facts is necessary in order to explain how some of the present issues are still germane.

On September 3, 1961, the Berlin Tiner and the Charles Tiner, Sr. families had been visiting relatives in Stuttgart and prepared to return to their homes in Pine Bluff. Some of the group were in the Berlin Tiner car and some were in the Charles Tiner, Sr. car. In the car with Berlin Tiner were his three children,[1] his niece Linda, and his nephew Charles, Jr. Others of the party group were in the car of Charles Tiner, Sr. Berlin Tiner

---

[1] Berlin Tiner's children were Berlin, Jr., Rita, and Glorya. They were the children of Berlin Tiner and his divorced wife, Mrs. Alma Jean Tiner, and all three of the Berlin Tiner children were killed in the collision.

left Stuttgart some time before Charles Tiner, Sr. When Berlin Tiner had traveled several miles from Stuttgart toward Pine Bluff he encountered a sudden rain shower which made the asphalt highway very slick. His car skidded and "fish-tailed,"[2] and finally ran into and against the car of A. R. Merritt, who was proceeding from Pine Bluff to Stuttgart. This collision between the Berlin Tiner car and the Merritt car resulted in the death of the three Berlin Tiner children, the death of Linda Tiner, permanent injuries to Charles Tiner, Jr., injuries to Berlin Tiner, and also injuries to the Merritts.

On July 19, 1962, Mr. and Mrs. Merritt filed action for damages in the Jefferson Circuit Court against Berlin Tiner. This was Case No. 15738 and is hereinafter referred to as the "Merritt-Tiner" case. Berlin Tiner, by answer and cross complaint, sought to recover damages against the Merritts for his personal injuries and damages. The National Bank of Commerce of Pine Bluff, as the administrator of the estates of the three Berlin Tiner children, intervened and sought damages against Merritt and also sought damages against Berlin Tiner; and a portion of the damages sought by the administrator was for the mental anguish of the mother of the minors, Mrs. Alma Jean Tiner. Later, by specific amendment, the said administrator of the Berlin Tiner children sought damages against Merritt for the mental anguish of Berlin Tiner on account of the death of his children.

On September 27, 1962, Charles Tiner, Sr., individually and in his representative capacity as father and next friend of Charles Tiner, Jr. and administrator of the estate of his deceased daughter Linda Tiner, filed action in the Jefferson Circuit Court against Berlin Tiner and A. R. Merritt, seeking damages for personal injuries of Charles Tiner, Jr., and damages for the death of Linda Tiner, and included were damages for the men-

---

[2] This very descriptive word is used in Webster's Third New International Dictionary in relation to an airplane or a ship; but the witnesses, in using it in the case at bar, explained that the rear end of the car would whip around to the front as the car skidded down the highway.

tal anguish of Mr. and Mrs. Charles Tiner, Sr. occasioned by the death of their daughter Linda. This is Case No. 15820 and is hereinafter referred to as the "Tiner-Tiner" case. This complaint alleged that Berlin Tiner was guilty of willful and wanton negligence and that A. R. Merritt was guilty of at least simple negligence. There were some interventions in this case and also various *in limine* pleadings.

On April 5, 1963, the Jefferson Circuit Court, over the objections of Berlin Tiner, consolidated the two cases (*i.e.,* No. 15738 *Merritt* v. *Tiner,* and No. 15820 *Tiner* v. *Tiner*); and jury trial commenced in the consolidated cases on April 9, 1963, and continued for six days. On April 11, 1963, in the course of the trial, the complaint of A. R. Merritt and wife against Berlin Tiner, and Berlin Tiner's cross complaint against Merritt, were both settled and dismissed from the trial then in progress. But there were left (a) against Merritt and intervention and complaint of the administrator of the estates of the three Berlin Tiner children; and also (b) against Merritt the intervention and complaint of Charles Tiner, Sr. for Charles Tiner, Jr., and the estate of Linda Tiner. There were also left (c) the claim of Charles Tiner, Sr. in his personal and representative capacity against Berlin Tiner; and (d) against Berlin Tiner the claims of the administrator of the estates of the Berlin Tiner children.

The Trial Court submitted the case to the jury on special interrogatories; and below we copy each interrogatory and the answer of the jury to the same:

"SPECIAL INTERROGATORY NO. 1. Do you find from a preponderance of the evidence in this case that A. R. Merritt was guilty of negligence which was a proximate cause of the collision?"

"ANSWER: NO."

"SPECIAL INTERROGATORY NO. 2. Do you find from a preponderance of the evidence in this case that Berlin Tiner, Sr. was guilty of operating his automobile in willful and wanton disregard of the rights of

others, and that such was a proximate cause of the collision?''

"ANSWER: YES."

"INTERROGATORY NO. 3. Do you find from a preponderance of the evidence in this case that Charles Tiner, Jr. was guilty of contributory negligence as defined in the instructions given you by the Court?''

"ANSWER: NO."

"INTERROGATORY NO. 4. Do you find from a preponderance of the evidence in this case that Alma Jean Tiner was guilty of contributory negligence as defined in the instructions given you by the Court?''

"ANSWER: NO."

"INTERROGATORY NO. 5. If you have answered the first 4 interrogatories 'Yes,' or if you have answered any two of the first 4 interrogatories 'Yes,' now please state the percentage of fault of each person found to be guilty of negligence of willful and wanton negligence, considering the whole negligence in the case, of whatever degree, to be 100%.''

(Since the jury did not answer any of the interrogatories "Yes" except the one relating to Berlin Tiner, it became unnecessary for the jury to answer this Interrogatory No. 5.)

"SPECIAL INTERROGATORY NO. 6. (To be answered only if either Interrogatory No. 1 or Interrogatory No. 2, or both, are answered 'Yes.') What do you find from a preponderance of the evidence in the case is the total damage sustained by:

(a) Charles Tiner, Jr., for his injuries?''

"ANSWER: $25,000.00."

"(b) Charles Tiner, Sr. for hospital, medical and doctor bills incurred by him because of the injuries to Charles Tiner, Jr.''

"ANSWER: $2,175.42."

"(c) Charles Tiner, Sr., as Administrator of the Estate of Linda Tiner, for the funeral expenses of said child?"

"ANSWER: $664.52."

"(d) Charles Tiner, Sr. and Frances Tiner for mental anguish, if any, suffered by them because of the death of said Linda Tiner?"

"ANSWER: $25,000.00 (Total)."

"(e) National Bank of Commerce of Pine Bluff, Administrator in Succession of the Estates of Berlin Tiner, Jr., Rita Tiner, and Glorya Tiner for the funeral expenses of said children? (Which is agreed to be $1,689.07.)"

"ANSWER: $1,689.07."

"(f) National Bank of Commerce of Pine Bluff, Administrator in Succession of the Estates of Berlin Tiner, Jr., Rita Tiner, and Glorya Tiner, for the benefit of Alma Jean Tiner, mother of said children, for mental anguish, if any, suffered by her as a result of the death of her three children?"

"ANSWER: $40,000.00."

Judgments[3] were rendered in accordance with the

---

[3] We copy the pertinent excerpts of said judgments: "IT IS, THEREFORE, BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that so much of the prayer of the intervention of the National Bank of Commerce as administrator of the estates of Berlin Tiner, Jr., Rita Tiner and Glorya Tiner as prays judgment against A. R. Merritt for mental anguish on behalf of Berlin Tiner be, and the same is hereby dismissed with prejudice pursuant to the directed verdict given by this Court.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that the plaintiff, Charles Tiner, Jr., through his father and next friend, Charles Tiner, Sr., do have and recover of and from the defendant, Berlin Tiner, judgment in the sum of Twenty Five Thousand ($25,000.00) Dollars.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that Charles Tiner, Sr. do have and recover of and from the defendant, Berlin Tiner, judgment in the sum of Two Thousand One Hundred Seventy-Five and 42/100 ($2,175.42) Dollars.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that Charles Tiner, Sr., as administrator of the estate of Linda Tiner, deceased, do have and recover of and from the defendant, Berlin Tiner, judgment in the sum of Six Hundred Sixty-Four ($664.00) Dollars.

verdicts, and from those judgments Berlin Tiner appealed from all judgments against him. The Administrator of the estates of the three Berlin Tiner children also appealed as against Merritt, but later the administrator dismissed all appeals against A. R. Merritt. Also, pending appeal, the judgments of the Bank as administrator of the estates of the three Berlin Tiner children, were settled and dismissed, which judgments against Berlin Tiner totalled $41,689.07. There are left now before us: (a) the appeal of Berlin Tiner against Charles Tiner, Sr., in his personal and representative capacity; and (b) the appeal of Berlin Tiner against A. R. Merritt on one angle of the case. We shall refer to Berlin Tiner as appellant and Charles Tiner, Sr. (in his personal and representative capacity) as appellee, and will refer to Merritt by such name, and the Administrator of the estates of the three Berlin Tiner children by such identification.

Berlin Tiner urges eight points on his appeal, being:

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that Charles Tiner, Sr. and Frances Tiner, jointly, do have and recover of and from the defendant, Berlin Tiner, judgment in the sum of Twenty Five Thousand ($25,000.00) Dollars by reason of the death of Linda Tiner.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that the National Bank of Commerce of Pine Bluff, administrator in succession of the estates of Berlin Tiner, Jr., Rita Tiner and Glorya Tiner, for the use and benefit of said estates do have and recover of and from the defendant, Berlin Tiner, judgment in the sum of One Thousand Six Hundred Eighty Nine and 07/100 ($1,689.07) Dollars, and that the National Bank of Commerce of Pine Bluff, as administrator in succession of the estates of Berlin Tiner, Jr., Rita Tiner, and Glorya Tiner, for the use and benefit of Alma Jean Tiner, their mother, do have and recover of and from the defendant, Berlin Tiner, judgment in the sum of Forty Thousand ($40,000.00) Dollars.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that the Intervenor in Case No. 15738 take nothing against A. R. Merritt, and said intervention, insofar as it pertains to A. R. Merritt, be, and the same is hereby, dismissed with prejudice.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED, that the plaintiffs in Case No. 15820 take nothing against A. R. Merritt, and said complaint, insofar as it pertains to A. R. Merritt, be, and the same is hereby, dismissed with prejudice.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that all of said judgments shall bear interest from the date of said judgment so entered herein at the rate of six per cent (6%) per annum and that the Intervenor and the Plaintiffs herein should have of and from Berlin Tiner their costs herein paid, and as to all of said judgments, garnishment and execution may issue as in law provided, to which judgment Berlin Tiner objects and excepts."

"I. The trial court erred in permitting National Bank of Commerce, Administrator-in-Succession of the Estates of Berlin Tiner, Jr., Rita Tiner and Glorya Tiner, Deceased (children of Berlin Tiner) to intervene in the case of A. R. Merritt, et al, vs. Berlin Tiner.

"II. The trial court erred in permitting consolidation for trial of the case of Charles Tiner, Sr., et al, vs. A. R. Merritt and Berlin Tiner (No. 15820) with the case of A. R. Merritt, et al, vs. Berlin Tiner (No. 15738).

"III. The trial court erred in giving an instructed verdict against Berlin Tiner on his claim against A. R. Merritt, et al, for mental anguish.

"IV. The trial court erred in giving instructions No. 3, No. 15, and No. 18.

"V. The trial court erred in failing to declare a mistrial, upon the motion of Berlin Tiner, based upon a statement made by counsel for Charles Tiner, Sr., et al, in his closing argument to the jury.

"VI. The verdict of the jury was contrary to the evidence in finding Berlin Tiner guilty of willful and wanton negligence.

"VII. The verdict of the jury was contrary to the evidence in finding that Charles Tiner, Sr., Frances Tiner and Charles Tiner, Jr., were free of negligence which contributed to the death of Linda Tiner and to the alleged injuries of Charles Tiner, Jr.

"VIII. The verdict of the jury was excessive."

## I and II.

We find no merit in the appellant's first two points. The Bank, as administrator of the estates of the three Berlin Tiner children, intervened and claimed damages against A. R. Merritt for at least simple negligence, and against Berlin Tiner for willful and wanton negligence. The claims of the administrator arose out of the one traffic mishap and were properly triable in the one case. Likewise, the consolidation of the two cases (No. 15728

and No. 15820) was within the sound discretion of the Trial Court; and we see no prejudicial error. The mere fact that some oft he parties (*i.e.,* the Merritts) might have recovered against Berlin Tiner by proving simple negligence, and that the other parties (*i.e.,* Charles Tiner, Sr. in his personal and representative capacity) could not recover against Berlin Tiner except by proving willful and wanton negligence—such situation—did not unduly complicate the case. The Court instructed the jury in detail on these matters, and the issues were submitted on special interrogatories. In short, we see no merit to appellant's first and second points.

### III.

Appellant's third point relates to the instructed verdict the Court gave in favor of A. R. Merritt in regard to the mental anguish claim of Berlin Tiner for the death of the three Berlin Tiner children. We find no prejudice to Berlin Tiner in such ruling. When the trial commenced on April 9th Berlin Tiner was suing A. R. Merritt for Berlin Tiner's personal injury and property damage. Also, Berlin Tiner had insisted that the administrator of the estates of his three deceased children claim damages against A. R. Merritt for Berlin Tiner's mental anguish suffered because of the death of his three children. On April 11, 1963 (the third day of the jury trial) there was entered an order settling and dismissing the claim of Berlin Tiner against A. R. Merritt and the claim of A. R. Merritt against Berlin Tiner.[4]

---

[4] The said order, including the captaion, reads as follows:

"IN THE
CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS

A. R. MERRITT, LETA S. MERRITT AND A. R.
MERRITT, TRUSTEE OF THE W. I. PAYNE
ESTATE _____PLAINTIFFS

v.                    No. 15738

BERLIN TINER, SR._____DEFENDANT

NATIONAL BANK OF COMMERCE OF PINE
BLUFF, ADMINISTRATOR IN SUCCESSION
OF THE ESTATES OF BERLIN TINER, JR.,
RITA TINER, AND GLORYA TINER, DE-
CEASED _____INTERVENOR

"ORDER OF DISMISSAL WITH PREJUDICE

"Now on this day come the plaintiffs, A. R. Merritt, Leta S. Merritt and A. R. Merritt, Trustee of the W. I. Payne Estate, by their

One of the claims of Berlin Tiner against A. B. Merritt was for the mental anguish Berlin Tiner claimed to have suffered because of the death of his three children. This claim was being prosecuted by the administrator of the estate of the three Berlin Tiner children. When the entire case was finally ready to submit to the jury several days after April 11, 1963, the Court instructed the jury that it would not consider any claim of Berlin Tiner against A. R. Merritt for mental anguish for the death of the three Berlin Tiner children. To that instruction Berlin Tiner objected, and now argues error.

There are several answers to appellant's argument. In the first place, the order of dismissal of April 11, 1963 (previously copied in the footnote) is broad enough to cover the mental anguish of Berlin Tiner against A. R. Merritt. Another and second answer is that the jury, in answer to Interrogatory No. 1, as previously copied, found that A. R. Merritt was guilty of no negligence. This finding rendered moot the matter of the instruction. *Johnston* v. *Fuqua,* 105 Ark. 358, 151 S. W. 693; *Capital Fire Ins. Co.* v. *Kaufman,* 91 Ark. 310, 121 S. W. 289. If Merritt was guilty of no negligence, then Berlin Tiner was not prejudiced by the Court's refusal to submit to the jury the issue of Berlin Tiner's mental anguish which could have been recovered against A. R. Merritt only if Merritt had been found guilty of negligence.

*Instructions.* The Trial Court gave more than thirty instructions covering all angles of the cases. Among

attorneys, Bridges, Young and Matthews and Coleman, Gantt and Ramsey, and comes the defendant, Berlin Tiner, Sr., by his attorney, Jay W. Dickey, and announce to the court that the issues in this litigation between these parties have been settled and that the complaint of the plaintiffs and the cross complaint of the defendant should be dismissed.

"It is, therefore, considered, ordered and adjudged by the court that the complaint of the plaintiffs, A. R. Merritt, Leta S. Merritt and A. R. Merritt, Trustee of the W. I. Payne Estate against Berlin Tiner, Sr., be and it is hereby dismissed with prejudice and that the cross complaint of the defendant, Berlin Tiner, Sr., against A. R. Merritt and A. R. Merritt, Trustee of the W. I. Payne Estate be and it is hereby dismissed with prejudice.

"April 11, 1963

"/s/ Henry W. Smith, Circuit Judge."

other instructions given by the Court were Nos. 3, 15, and 18, each of which was given over the general and specific objections of Berlin Tiner. It would unduly prolong this opinion and would serve no useful purpose to copy the thirty instructions, and the appellant's objections to each of them. It is sufficient to say that we have carefully studied each of the instructions, the evidence which justified the Court in giving each, and the law which supports each; and we have concluded that there is no merit to appellant's arguments regarding any of these instructions.

## V.

Appellant claims he was entitled to a mistrial because of a statement made by the counsel for Charles Tiner, Sr. in his closing argument. To give all the details concerning this situation would unduly prolong this opinion; but we find no merit to this point. The fact that Berlin Tiner was driving an automobile which belonged to the Smart Chevrolet Company had been mentioned several times in the course of the trial. Berlin Tiner himself testified, without objection, on Tr. p. 635: "I was driving a demonstrator automobile furnished me by Smart Chevrolet Company." So the fact that the attorney for appellee, in his closing argument, happened to mention the name of Smart Chevrolet Company, did not constitute any reversible error. Furthermore, the Court, when objection was made, promptly told the jury to entirely disregard any such reference. With all of this clearly shown, we find no merit to appellant's fifth contention.

## VI.

Appellant's sixth point relates to the action of the Court in submitting the case to the jury on the question of whether Berlin Tiner was guilty of willful and wanton negligence. At every step in the trial the appellant insisted that there was no evidence of his willful and wanton negligence; and that is the point now before us. Our guest statutes are Ark. Stat. Ann. §§ 75-913 and 75-915 (Repl. 1957). Linda Tiner and Charles Tiner, Jr.

were guest passengers in the car of Berlin Tiner, and neither Charles Tiner, Jr. nor the estate of Linda Tiner can recover against Berlin Tiner unless and until they show that Berlin Tiner was guilty of willful and wanton negligence. Likewise, the three Berlin Tiner children were guest passengers in the car of Berlin Tiner; and the administrator of the estate of each of these children cannot recover for the estate or for the mental anguish of the mother, Mrs. Alma Jean Tiner, unless and until it is shown that Berlin Tiner was guilty of willful and wanton negligence. The Court so instructed the jury; and the instructions on this point are almost verbatim from those approved by us in the case of *Harkrider* v. *Cox,* 230 Ark. 155, 321 S. W. 2d 226.

With the burden being thus understood, we view the evidence in the light most favorable to the verdicts, as is our rule. What is the evidence as to the willful and wanton negligence of Berlin Tiner?

(1) Berlin Tiner stated that shortly before the collision there began a torrential rain: "...I went into it not as a drizzle. I went into the rain as a sheet or wall of rain ..." He testified that his car began to skid or "fish-tail" on the slick asphalt road and was well over the center line, and on his left at the time of the collision, and had skidded or "fish-tailed" so much that the rear of his car was in front of the motor.

(2) It was shown that during the "sheet or wall of rain" visibility was practically nil.

(3) Charles Tiner, Jr. testified that shortly before the Berlin Tiner car entered the rain the car was traveling 80 miles an hour and that there was no lessening of that speed even up to the time of the collision. Other witnesses placed the speed of the Berlin Tiner car at 70 miles an hour, even as it approached the Merritt car.

So the question is whether a person traveling 80 miles per hour[5] in a sheet of rain, with practically no visibility, can thereby be found guilty of willful and

---

[5] Of course, Berlin Tiner denied such speed but, as aforesaid, we must view this evidence in the light most favorable to support the jury verdict.

wanton negligence. Some of our recent cases on our guest statute[6] are: *Harkrider* v. *Cox*, 230 Ark. 155, 321 S. W. 2d 226; *Sims* v. *Tingle*, 232 Ark. 239, 335 S. W. 2d 449; *Cousins* v. *Cooper*, 232 Ark. 605, 339 S. W. 2d 316; *Henshaw* v. *Henderson*, 235 Ark. 130, 359 S. W. 2d 436; and *Spencer* v. *Vaught*, 236 Ark. 509, 367 S. W. 2d 238. In *Harkrider* v. *Cox* and in *Spencer* v. *Vaught* we had occasion to consider the sufficiency of the evidence to take the case to the jury on the question of willful and wanton negligence; and we think the evidence in the case at bar meets all the tests stated in *Harkrider* v. *Cox*. Here, there was an excessive speed, with a lack of visibility, and a skidding car. One witness testified that Berlin Tiner told him that he could have gone to the ditch on the road on his right side but did not want to injure the car. This was bitterly denied; but it was evidence which the jury had a right to believe. So, we have a man driving down the road at a speed of 80 miles an hour, with his car skidding and "fish-tailing," with no visibility, and no real effort to check the speed of the car. We conclude that this evidence is sufficient to take the case to the jury on the question of willful and wanton negligence.

## VII.

Appellant's seventh point relates to the matter of contributory negligence; and we find no merit to appellant's argument on this point. There is no evidence that Charles Tiner, Sr. was guilty of contributory negligence in allowing his children to travel in the car of Berlin Tiner. Charles Tiner, Jr. was thirteen years of age at the time of the collision, and Linda Tiner was ten years of age. The issues of negligence and contributory negligence are usually questions of fact; and, without reviewing all the evidence, we reach the conclusion that the question of the contributory negligence of these children was a question of fact for the jury. The jury found that they were not guilty of contributory negligence; and we cannot say that the jury's findings were in error.

---

[6] See "Family Torts in Automobile Cases" in 13 Ark. Law Review 299; and see also annotation in 42 A.L.R. 2d 350: "Rights of injured guests as affected by obscured vision from vehicle in which he was riding."

# VIII.

Appellant's eighth and final point states that the jury verdicts were excessive. We have previously copied the verdicts. Charles Tiner, Jr. recovered for his injuries and pain and suffering the sum of $25,000.00. This is in no wise excessive. His right wrist was broken, his left arm was broken above the elbow, his left leg and hip were dislocated, and he had three broken ribs on his right side. He was unconscious for some time and was in the hospital several weeks and lay flat on his back for six weeks. A brace was placed on his foot and connected to his knee to force his foot to take a step. The doctor who treated him, and whose qualifications were admitted, testified that he saw the boy nearly every day while he was in the hospital; that the boy had a 54% disability to his left leg below the knee due to the permanent loss of sensation of feeling in the leg, as well as an inability to lift the foot; that the boy had a 21% disability to the left arm because the fracture had healed with a little angulation, resulting in the arm swinging toward the body rather than at the normal carrying angle where it swings from the upper arm; that the boy had a very weak joint and lift of the left foot and as a result had a tendency to drag the toe, giving him a peculiar gait; and would probably develop traumatic arthritis of the elbow joint. The doctor stated that Charles Tiner, Jr. had a 24.8% disability to his body as a whole; and, in the doctor's opinion, these injuries were permanent. Here is a young boy, maimed for life. Prior to the collision he had played baseball and football, and danced. All of these are now taken from him. Certainly the $25,000.00 judgment in his favor is in no wise excessive.

Charles Tiner, Sr. recovered judgment for $2175.42 because of the medical and doctor bills that he paid as the father of Charles Tiner, Jr.; and this is not excessive. Charles Tiner, Sr. paid the funeral expenses of his daughter, Linda Tiner, of $664.52, and recovered judgment for this amount; and no excess is present.

There remains, however, one verdict[7] which gives us most serious concern and that is the judgment of $25,000.00 to Charles Tiner, Sr. and his wife for mental anguish suffered because of the death of their daughter, Linda Tiner. Our statute allowing recovery for mental anguish in cases like this is Act No. 255 of 1957, now found in Ark. Stat. Ann. § 27-906 *et seq.* (Repl. 1962). This statute was upheld by us in *Peugh* v. *Oliger,* 233 Ark. 281, 345 S. W. 2d 610, in which case there is contained a discussion of mental anguish. In 15 Am. Jur. 602, ''Damages'' § 183, the holdings of various jurisdictions are summarized:

''Mental anguish from a pecuniary standard, is incapable of definite calculation. The law furnishes no definite rule or standard by which such suffering may be valued or compensated for in money or which will afford a certain basis upon which damages therefor can be estimated. The amount to be awarded in any particular case necessarily, therefore, rests in the discretion of the jury, subject to review as in other cases. The difficulty in measuring damages of this kind, moreover, should not preclude their recovery in a proper case.''

In *Smith* v. *Tipton,* 237 Ark. 486, 374 S. W. 2d 176, we held that a verdict was not excessive which awarded parents $12,500.00 for mental anguish for the death of a son and there said:

''As to the *deceased boys,* there has not been and will never be devised a definite and satisfactory rule by which to determine the amount of money required to compensate parents for mental anguish. Ronnie Tipton and Johnnie Lee Roughley were normal boys with normal parent-child relationships. There can be no doubt from the testimony that their parents' grief was deep and genuine. The depth of grief of the mother of Johnnie was so great that she was unable to sleep at night and she often arose from the bed and walked some four miles to the cemetery where he was buried. Ronnie Tipton was an only child.

---

[7] There was a verdict in favor of the Bank, as Administrator of the estates of the three Berlin Tiner children, for $40,000.00 for mental anguish of Mrs. Alma Jean Tiner, the mother of the children; but this was settled pending appeal and is not before us.

We are unwilling to say the judgment of $12,500.00 in each case was excessive."[8]

The question now before us is whether the verdict for $25,000 for mental anguish in the case at bar is so grossly excessive as to shock the conscience of the Court. It is true that the verdict is large; but the evidence shows most strongly the great mental anguish that these parents have suffered. To detail such evidence would serve no useful purpose. It is sufficient to say that after reviewing all the evidence we cannot say that the verdicts should be reduced. Therefore, we leave them undisturbed.

Finding no error in the entire case, the judgments are affirmed.

HARRIS, C.J., not participating.

---

[8] We find the following language used by the Florida Supreme Court in *Florida Dairies Co.* v. *Rogers,* 161 So. 85: "Damages for mental pain and suffering are not generally regarded as punitive, but more in the nature of compensatory. The law has devised no fixed standard by which they can be calculated, and since this is the case, the amount to be awarded must rest in the discretion of the jury. The law measures compensation for mental pain and suffering in money, and while this may be a poor criterion, it has been said that to forbid it because perchance the law's scales are not sufficiently delicate for their admeasurement is equally to condemn the use of scales in all other directions, and in the very cases and for the very purposes now admittedly sanctioned by the law."