194

L. D. DELANEY, Individually and as
Administrator of the Estate of
Betty DELANEY *v.* Mike MIZE

79-310                                    599 S.W. 2d 710
Supreme Court of Arkansas
Opinion delivered June 2, 1980
Rehearing denied July 7, 1980

*Guy Jones, Jr.*, for appellant.

*Matthews & Sanders*, for appellee.

JIMASON J. DAGGETT, Special Justice. This case was brought in the Circuit Court of Faulkner County, Arkansas, by L. D. Delaney, individually and as Administrator of the Estate of Betty Delaney, against Mike Mize, who was the driver of an automobile wherein Betty Delaney was killed while riding as passenger. The plaintiff administrator, now Appellant, brought suit against the driver, alleging willful and wanton conduct, as well as negligence. The defendant pled the Arkansas guest statute (Ark. Stat. Ann. § 75-913). Upon the trial, by agreement of the-parties, all "liability evidence" was submitted to the jury. At the conclusion of the plaintiff's testimony the defendant moved for a directed verdict, "on the basis that the evidence adduced clearly does not show any willful and wanton misconduct on the part of the defendant Mike Mize." The trial court granted the motion for a directed verdict, holding that there was no evidence in the record that would justify a jury finding the defendant guilty of willful or wanton misconduct. The trial court also ruled that the guest statute was constitutional. Thus is presented to this Court two questions:

First, the constitutionality of the Arkansas guest statute; and

Second, was the proof presented as to willful and wanton misconduct on the part of defendant-appellee sufficient to submit that issue to the jury?

Factually, on January 31, 1972, Betty Delaney, Mike Mize, Dale Sowell and Donnie Harlan were at the Vilonia High School at night as participants in a chemistry experiment. Following the conclusion of the experiment, Betty Delaney had to "catch a ride" home with one of the other students. Dale Sowell, Donnie Harlan and Mike Mize all offered to drive her home, but she chose to ride with Mike. The three vehicles left the school together, with Betty Delaney a passenger in Mike Mize's vehicle. The Harlan vehicle was the front one, followed by Dale Sowell and then

Mike Mize. There is no evidence that anybody was in a hurry or that there was any urgent reason to reach their respective destinations.

The only witness to the accident was Dale Sowell. According to his testimony, he was driving his vehicle about 50 to 55 miles an hour, five to six car lengths behind the Harlan vehicle, when the Harlan vehicle began to slow down and its blinker lights began to work. Then, young Sowell testified, "I started to slow down," and that at that time his speed was "about 50, maybe 55." He stated he had not paid any attention to the vehicle being driven by Mike Mize behind him. When Mr. Sowell noticed the brake lights on the Harlan car and began slowing his own vehicle, he fixes the location of the Mize vehicle as follows:

"Q. At the time you touched your brakes and started braking your vehicle and slowing it down, where was the defendant's vehicle?

"A. Beside me.

"Q. Right beside you? How fast do you think he was going?

"A. About 60.

"Q. How much faster than you do you think he was going?

"A. That would have been about 5, maybe 10, miles an hour."

Mr. Sowell testified that he noticed oncoming lights from the opposite direction.

"Q. When you noticed Mike Mize's car coming right next to your vehicle, how far away was this other car coming from Beebe to Conway?"

He answered that the oncoming car was "close enough so

that I got on my brake to try to let him in. I thought he needed to be getting back in our lane."

Officer Purcell was permitted, without objection, to give his version of the accident. He testified:

"Mike Mize attempted to pass the Sowell vehicle, and at this same time the Harlan vehicle had started to make a left turn; he was giving his signal. Mike Mize at this time applied his brakes and skidded to his right across the right-hand land 99 feet. At this point he reached the shoulder and the car began to yawl sideways. He skidded 82 feet down the shoulder gradually going back to his left and then 61 feet angling across the highway. At this point Miss Gail Spencer was an oncoming vehicle, and as they got onto the shoulder Miss Spencer also veered onto the shoulder in an attempt to avoid the vehicle sliding in front of her, and she struck the Mize vehicle at the right hand side of the door."

The officer testified that his investigation revealed there were two slick tires on the right side of the Mize vehicle and that at the site of the accident the speed limit was 60 miles per hour. The weather condition was cloudy and cold and the road surface was dry.

It was also established by young Sowell that he knew where Mr. Harlan lived and that Mike also knew where Harlan lived. The Harlan vehicle was attempting to turn into the road leading to the Harlan house at the time of the accident.

These are the essential facts upon which the trial court concluded that there was not sufficient evidence of willful or wanton misconduct to submit to the jury.

We think he properly so concluded.

The question here presented is not whether Mike Mize was negligent in causing this accident. Counsel for the defendant readily admitted that there was sufficient evidence of negligence to justify the submission of the case to the jury in

the absence of the guest statute. The question presented is whether or not Mike Mize was guilty of willful and wanton misconduct. Actions necessary to constitute such misconduct have been stated by this Court many times. The case of *Carden v. Evans*, 243 Ark. 233, 419 S.W. 2d·295 (1967), clearly states the requirement:

> "In order to constitute the willful misconduct required, there must be a *conscious failure to perform a manifest duty* in reckless disregard of natural or probable consequences to the life or property of another, as distinguished from gross negligence which does not involve such reckless disregard of consequences. There must be a willfulness, a wantonness and indifferent abandonment in respect of consequences, applicable alike to self and guest. *Cooper v. Calico*, 214 Ark. 853, 218 S.W. 2d 723. The burden of proof to show the required conduct was upon appellee. *Pool v. James*, 231 Ark. 810, 332 S.W. 2d 833; *Splawn v. Wright*, supra. Before a driver will be found guilty of this conduct, the evidence should be unusually strong and convincing. *Splawn v. Wright*, supra."

\* \* \*

> "There can be no liability on the part of young Carden unless there is evidence to show his vehicle was willfully and wantonly operated in disregard to the rights of others — particularly Martha Jane Evans. While the evidence undoubtedly shows negligence, perhaps even gross negligence, on his part, it is not sufficient to show the required willfulness and wantonness."

In *Pool v. James*, 231 Ark. 810, 332 S.W. 2d 833 (1960), willful and wanton conduct is described as follows:

> ". . . willful misconduct, or to operate an automobile in willful and wanton disregard of the rights of others, means something more than gross negligence, and . . . willful negligence is greater in degree than gross negligence; *to be willfully negligent one must be conscious of his conduct* — that is, he must, in the light of surrounding

circumstances, comprehend that his act will naturally or probably result in injury. Differently expressed, willful negligence involves the element of conduct equivalent to a so-called constructive intent. *Steward, Admr.* v. *Thomas*, 222 Ark. 849, 262 S.W. 2d 901."

We believe the evidence here falls "short of the mark." In this case there is no evidence of adverse weather conditions, as frequently appears in these cases. See *Splawn* v. *Wright*, 198 Ark. 197, 128 S.W. 2d 248 (1939). Nor is there any evidence of excess speed as in such cases as *Edwards* v. *Jeffers*, 204 Ark. 400, 162 S.W. 2d 472; *Carden* v. *Evans*, 243 Ark. 233, 419 S.W. 2d 295. In the case at bar the weather was "clear and dry" and the only eye witness to the speed of the vehicle at the time fixed it at 55 to 60 miles per hour. The speed limit at the scene of the accident was established at 60 miles an hour.

The principal contention that Mike was guilty of misconduct consisted in the allegations that (1) he was driving a vehicle with slick tires, and (2) he attempted to pass the Sowell vehicle when he was aware that the Harlan vehicle was preparing to make a left hand turn. Trooper Purcell testified that the Mize car had two slick tires on the right side. It is established, however, that the vehicle belonged to Mike Mize's father. There is no direct testimony to the effect that Mike Mize was aware of the condition of the tires. Mike Mize was not called to testify. We are not cited to any authority holding that the operation of a vehicle with slick tires is, of itself, misconduct. As to the attempted passage, Sowell testified that when he first saw the turning lights of the Harlan vehicle, the Mize vehicle was "along side" of him. There were no obstructions to the vision of either Mize or Sowell. Therefore, it is reasonable to assume that both Sowell and Mize simultaneously saw the lights when they first came on. At the time the attempted passage was underway. The facts, therefore, do not establish that Mize was attempting the passage with fore-knowledge that Harlan was making a left turn. At best, it seems to us that the evidence establishes that Mize, being unaware of any existing complications, simply attempted to pass the vehicle in front of him, which decision in the light of subsequent developments turned out

to be an unwise one. This, in our opinion, does not constitute willful and wanton misconduct. There does not appear to be any "conscious failure to perform a manifest duty" in this case.

## II.

The Constitutionality of the Arkansas Guest Statute.

This Court has now had presented to it on five separate occasions the constitutionality of the Arkansas guest statute. On each occasion the Court has upheld same. See *Roberson* v. *Roberson*, 193 Ark. 669, 101 S.W. 2d 965 (1937); *Emberson* v. *Buffington*, 228 Ark. 120, 306 S.W. 2d 120 (1957); *White* v. *Hughes*, 257 Ark. 627, 519 S.W. 2d 70 (1975); and *Rone* v. *Miller*, 257 Ark. 791, 520 SW. 2d 268 (1975).

As recently as February 11, 1980, we have again affirmed the constitutionality of the guest statute. See *Charles D. Davis, et al* v. *Cox*, 593 S.W. 2d 180. In this case we said:

> "It is not our function to rule on the wisdom or practicality of an act of the Legislature; rather, we must limit ourselves solely to consideration of its constitutionality. Resolving any doubt about our guest statute in favor of constitutionality, as we must, we cannot say that the statute has no fair and rational relation to the objectives of the Legislature."

We again so state.

Appellant also contends that the statute is violative of the Fourteenth Amendment to the Constitution of the United States. This contention was fully considered and rejected by the United States Supreme Court in its original opinion in *Silver* v. *Silver*, 280 U.S. 117. The argument was last presented to us. again in the case of *Davis* v. *Cox*, supra, and again rejected.

Affirmed.

FOGLEMAN, C.J., and HICKMAN and MAYS, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. A disagreement with the majority's characterization of the evidence. The majority states:

> . . . There is no evidence that anybody was in a hurry or that there was any urgent reason to reach their respective destinations. . . .

I believe that the evidence in this case would have warranted a jury to find that the three teenagers, who were driving separate vehicles, were racing, or at least that Mike Mize, the appellee who was the driver of one of the vehicles, was driving at an excessive rate of speed in reckless and wanton disregard for his own life and the life of others.

The youngsters in question were attending a night chemistry class at the Vilonia High School. After the class was over, a group of them left in three vehicles. Donnie Harlan was driving the first vehicle; Dale Sowell, a witness in this case, was driving the second vehicle; Mike Mize was behind them and his passenger was the deceased, Betty Delaney. Sowell testified, "I probably left fairly fast." The evidence was they were going home. All the parties knew that the driver of the first vehicle, Donnie Harlan, lived down the highway several miles on the left. The vehicles were in a line, traveling down a straight stretch of highway which passed Harlan's house. As they were approaching Harlan's house, Mize pulled out to pass. Another vehicle was coming towards the three vehicles; Mize could not get back in his lane of traffic. His vehicle went into a skid for 99 feet in a straight line, went into a skid sideways for 82 feet and then skidded another 61 feet before it hit the oncoming vehicle. It demolished Mize's vehicle and killed Betty Delaney.

Sowell testified that Mize's vehicle was beside him, trying to pass him when Harlan's vehicle began to slow and was making a left turn signal at the same time an oncoming vehicle was approaching. Mize knew, or should have known, Harlan would turn; Sowell saw the oncoming vehicle; so did Mize or he should have.

I believe this was sufficient evidence for the jury to con-

clude that Mize was guilty of willful and wanton negligence. For that reason I would reverse the judgment of the trial court and let the jury decide this matter.

FOGLEMAN, C.J., and MAYS, Jr., join in this dissent.