**Bobby Glen HALL, Individually and as Next Friend and Natural Guardian of Tony Eugene Hall, Appellee,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Appellant.**

**Bobby Glen HALL, Individually and as Next Friend and Natural Guardian of Tony Eugene Hall, Appellant,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Appellee.**

Nos. 86–1449WA, 86–1468WA.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1986.

Decided Feb. 26, 1987.

Rehearing Denied March 31, 1987.

Beverly A. Rowlett, Little Rock, Ark., for appellant.

Richard N. Dodson, Texarkana, Ark., for appellee.

Before McMILLIAN and ARNOLD, Circuit Judges, and HUNTER,* Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

Appellee Bobby Glen Hall brought the action below to recover for injuries sustained by his minor son, Tony Eugene Hall, on a hayride sponsored by the Forest Grove Missionary Baptist Church of Taylor, Arkansas.[1] Tony Hall suffered serious injuries to his left foot when it became entangled in the tandem wheels of a hay trailer that was being pulled by a tractor. This action was brought directly against Appellant State Farm Fire & Casualty Company ("State Farm") pursuant to Arkansas's Direct Action Statute. Ark.Stat. Ann. § 66–3240 (1980 Repl). The trial court ruled as a matter of law that Tony was a guest within the meaning of Arkansas's Guest Statute. Ark.Stat.Ann. §§ 75–913, 75–914 (1979 Repl.)[2] The Appellee, therefore, was required to prove that Tony Hall's injuries were caused by the Church's willful and wanton conduct. The jury returned a verdict for the Appellee in the amount of $230,000. The trial court later granted a motion to amend the judgment to $97,994.02 because the Church's liability coverage was limited to $100,000 and the Church had previously paid a portion of Tony Hall's medical bills totaling $2,005.93.

There are two issues presented on this appeal. First, Appellant State Farm contends that the trial court erred in failing to direct a verdict or grant judgment N.O.V. in its favor. State Farm contends that there was insufficient evidence to support a finding that the Church's conduct was willful and wanton. Second, Appellee Bobby Hall argues on his cross appeal that the trial court should not have ruled as a matter of law that Tony Hall was a guest of the Church within the meaning of the guest statute.

## I

After carefully reviewing the evidence presented below in light of Arkansas case law, we hold that the trial court improperly denied the Defendant's motion for directed verdict and for judgment N.O.V. on the willful and wanton issue.

"In ruling on a motion for judgment N.O.V., [the trial court is to] (a) consider the evidence in the light most favorable

---

* The Hon. Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. This appeal was filed pursuant to 28 U.S.C. § 1291. Jurisdiction below was based on diversity of citizenship, 28 U.S.C. § 1332. The sub-

stantive law of the State of Arkansas is the applicable law.

2. The Arkansas Guest Statute was repealed in 1983.

to the plaintiffs as the verdict-winning parties, (b) assume that the jury resolved all conflicts of evidence in favor of the plaintiffs, (c) assume as true all facts which the plaintiffs' evidence tended to prove, (d) give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from proved facts, and (e) deny the motion if in light of the above reasonable jurors could differ as to the conclusions that could be drawn from the evidence.

*Brown v. Missouri Pacific Railroad,* 703 F.2d 1050, 1052 (8th Cir.1983) (citing *Hanson v. Ford Motor Co.,* 278 F.2d 586, 596 (8th Cir.1960)).

This same standard is applied to test the sufficiency of the evidence for a motion for directed verdict, *Tackett v. Kidder,* 616 F.2d 1050, 1053 (8th Cir.1980); *Dulin v. Circle F Industries, Inc.,* 558 F.2d 456, 465 (8th Cir.1977), and is the standard to be applied by this court on appeal. *Brown,* 703 F.2d at 1052; *Dulin,* 558 F.2d at 465.

The Arkansas Supreme Court has consistently held that whether a vehicle was operated in a willful and wanton manner is to be determined by the facts and circumstances of each individual case. *See, e.g. Lawrence v. Meux,* 282 Ark. 512, 669 S.W.2d 464, 466 (1984); *Lee v. Watkins,* 246 Ark. 15, 436 S.W.2d 479, 480 (1969).

> Wantonness, in the sense of the statute, is a mental attitude shown when a person, notwithstanding his conscious and timely knowledge of an approach to an unusual danger and common probability of injury to others, proceeds into the presence of danger with indifference to consequence and with absence of all care.

*Carden v. Evans,* 243 Ark. 233, 419 S.W.2d 295, 297 (1967); *see also Lawrence,* 669 S.W.2d at 466; *Champagne v. Farnsworth,* 272 Ark. 110, 612 S.W.2d 121, 122 (1981).

This, of course, requires a showing of more than mere negligence, or even gross negligence. *Lawrence,* 669 S.W.2d at 466; *Carden,* 419 S.W.2d at 296; *Lee,* 436 S.W.2d at 480. The guest does not, however, have to prove that the defendant intended to cause his injury. *Lawrence,* 669 S.W.2d at 466; *Ellis v. Ferguson,* 238 Ark. 776, 385 S.W.2d 154, 155 (1964). The Arkansas Supreme Court has stated that before one can be found guilty of engaging in willful and wanton conduct "the evidence should be unusually strong and convincing." *Carden,* 419 S.W.2d at 297. The burden of proving willful and wanton conduct is on the plaintiff-guest. *Carden,* 419 S.W.2d at 297.

Appellee's main argument in support of the jury's finding of willful and wanton conduct centers around the trailer used on the hayride. The trailer is approximately 20 to 25 feet long by 8 to 10 feet wide and is normally used for transporting hay. Approximately 12 to 18 inches above the trailer bed is a guard rail that runs along the sides of the trailer. The trailer's tandem wheels extend 6 to 10 inches above the trailer bed. The guard rail sets above the top of the wheels and does not extend down far enough to cover them up. Moreover, the trailer is not equipped with fenders, or any other barriers between the tires and the bed, so the wheels are exposed to those riding on the trailer. The Church's pastor testified that he was aware of this and recognized that without such barriers there was nothing to prevent a rider from coming in contact with the wheels. The Church had several adults along on the hayride. Two adults were in a pickup truck and an adult was driving the tractor. In addition, there was at least one 19 or 20 year old young adult riding on the trailer.

Witnesses for both parties testified that the children were given safety warnings before the hayride began. However, there was some dispute as to the content and extent of the warnings. Plaintiff did not deny that some warnings may have been given; he merely testified that he was not present when any such warnings may have been given. For the purposes of this appeal, we will assume that, while some warnings were given to the children, the Plaintiff did not hear them.

The hayride took place at night. There were no lights on the trailer, but the driver of the tractor had a hand-held spotlight

which was pointed on the trailer bed every 4 to 5 minutes. In addition, the truck following the trailer alternated between having its parking and headlights on and having only its parking lights on. There was testimony that during the hayride the lights were used in order to allow the adults to keep an eye on the children.

During the hayride, Tony Hall was sitting on the trailer next to the wheels. He stated that partway through the hayride his foot "fell asleep." He then changed positions and tried to work some feeling back into his foot. In doing so, his left foot came into contact with the moving wheels and he suffered serious injuries which, among other things, required the partial amputation of his injured foot.

The Arkansas Supreme Court has uniformly required a high degree of misconduct to support a Plaintiff's verdict under the guest statute requirement of willful and wanton conduct. It has consistently overturned verdicts which were not supported by that degree of misconduct. For example, in *Carden v. Evans, supra,* the Defendant lost control of his car while driving through a curve at 60 to 70 miles per hour. Shortly before the wreck the Defendant had been helping a passenger adjust her seatbelt and, thus, had not been watching the road. In addition, he did not slow down at all before or after entering the curve in the road, despite Plaintiff's complaints. Nonetheless, the Arkansas Supreme Court overturned a verdict for the plaintiff-guest holding that there was insufficient evidence to support the jury finding that the defendant's conduct was willful and wanton.

In *Splawn v. Wright,* 198 Ark. 197, 128 S.W.2d 248 (1939), the defendant was adjusting his car's heater and was not watching the road as he went around a curve on a wet gravel road. He was traveling approximately 45 miles per hour. He lost control of the car as it came out of the curve and hit a bridge. The Arkansas Supreme Court overturned a judgment for the plaintiff-guest stating there was not substantial evidence of willful and wanton conduct in the record.[3]

Conversely, in *Champagne v. Farnsworth, supra,* the Arkansas Supreme Court found sufficient evidence of willful and wanton behavior to support a verdict under the guest statute. There, the guest was killed when the defendant lost control of his car, crossed the center line and struck an oncoming truck. The defendant had been driving 80 miles per hour in a rainstorm, with a right front tire that was worn slick. In addition, there was evidence that the defendant knew of the condition of the right front tire. In *Tiner v. Tiner,* 238 Ark. 222, 379 S.W.2d 425 (1964), the defendant was driving 70 to 80 miles per hour in a torrential rainstorm when he lost control of the car and hit another vehicle. Evidence presented at trial indicated that it was raining so hard that there was practically no visibility. The court upheld a verdict in favor of the plaintiffs-guests.[4]

■ We believe that the situation at hand is closer to that in the *Carden* and *Splawn* cases, than that in *Champagne* and *Tiner* cases. While the Church, through its agents, knew the wheels on the trailer were exposed and an injury could

---

**3.** *See also Lawrence,* 669 S.W.2d 464; *Delaney v. Mize,* 269 Ark. 194, 599 S.W.2d 710 (1980); *Lee,* 436 S.W.2d 479; *Ellis,* 385 S.W.2d 154; *Stobaugh v. Hubbard,* 234 Ark. 917, 355 S.W.2d 283 (1962); *Farish v. Ben M. Hogan & Co.,* 223 Ark. 600, 267 S.W.2d 502 (1954); *Steward v. Thomas,* 222 Ark. 849, 262 S.W.2d 901 (1953); *Cooper v. Calico,* 214 Ark. 853, 218 S.W.2d 723 (1949); *Edwards v. Jeffers,* 204 Ark. 400, 162 S.W.2d 472 (1942). In all of these cases, the Arkansas Supreme Court held there was not enough evidence to support a finding that the defendant was engaged in willful and wanton conduct.

**4.** In the following cases sufficient evidence was presented to support a finding of willful and

wanton conduct: *Sloan v. Tarlton,* 285 F.2d 575 (8th Cir.1961); *Ray v. Mock,* 257 Ark. 40, 513 S.W.2d 916 (1974); *McCall v. Liberty,* 248 Ark. 618, 453 S.W.2d 24 (1970); *Palmer v. Myklebust,* 244 Ark. 5, 424 S.W.2d 169 (1968); *Bridges v. Stephens,* 238 Ark. 801, 384 S.W.2d 490 (1964); *Cousins v. Cooper,* 232 Ark. 605, 339 S.W.2d 316 (1960); *Harkrider v. Cox,* 230 Ark. 155, 321 S.W.2d 226 (1959); *Cooper v. Chapman,* 226 Ark. 331, 289 S.W.2d 686 (1956); *Scott v. Shairrick,* 225 Ark. 59, 279 S.W.2d 39 (1952); *McAllister v. Calhoun,* 212 Ark. 17, 205 S.W.2d 40 (1947).

occur if someone came in contact with the moving wheels, its conduct did not rise to the level of willful and wanton, as defined by Arkansas case law. The Church simply did not "proceed into the presence of danger, with indifference to consequences and *with absence of all care.*" *Ellis,* 385 S.W.2d at 155 (emphasis added). The Church had adults present supervising the hayride and, even though the plaintiff did not hear the warnings, safety warnings were given. In addition, the adults periodically shined lights on the trailer in order to check on the children riding on the trailer. The record below would easily support a verdict based on simple negligence and possibly one on gross negligence. But, even when viewed in a light most favorable to the Appellee, as it must be on this appeal, the record does not support a finding of willful and wanton conduct on the part of the Church. Thus, the trial court erred in denying the defendant's motions for directed verdict and for judgment notwithstanding the verdict.

## II

■ The second and final issue in this case is whether the trial court erred in holding, as a matter of law, that Tony Hall was a guest within the meaning of the guest statute. Again, we must determine whether, when viewed in a light most favorable to the Appellee, the record is such that "reasonable jurors could differ as to the conclusion that could be drawn from the evidence." *Brown,* 703 F.2d at 1052. If so, the trial court should not have directed a verdict on the guest issue, but should have submitted the issue of whether or not Tony Hall was a guest to the jury for its determination.

The Appellee concedes that no admission fee was charged to those attending the hayride including Tony Hall. However, it is not necessary that a passenger pay the driver in order to avoid being labeled a guest. Rather, the key is to determine who was benefited by the ride. *Buffington v. Wright,* 239 Ark. 138, 388 S.W.2d 100, 101–02 (1965); *Simms v. Tingle,* 232 Ark. 239, 335 S.W.2d 449, 450 (1960);

*Whittecar v. Cheatham,* 226 Ark. 31, 287 S.W.2d 578, 579 (1956). If the direct operation of the vehicle "confers a benefit only on the person to whom the ride is given and no benefits other than such are incidental to hospitality, companionship or the like [are conferred] upon the person extending the invitation, the passenger is a guest." However, if the ride promotes "the mutual interests of both the passenger and the driver for their common benefit, or if *it* is primarily for the attainment of some objective or purpose of the operator, the passenger is not a guest." *Simms,* 335 S.W.2d at 450; *see also Buffington,* 388 S.W.2d at 101–02.

The Arkansas Supreme Court has frequently stated that since the guest statute is in derogation of common law, it is not to be extended beyond correcting the evil it was enacted to prevent, namely collusive lawsuits. *Graves v. Moore,* 275 Ark. 271, 628 S.W.2d 564, 565 (1982); *Rogers v. Lawrence,* 227 Ark. 117, 296 S.W.2d 899, 901 (1956); *Whittecar,* 287 S.W.2d at 579.

There was some evidence presented at trial which tends to show that the Church received a benefit from the hayride. When called as a witness by the Appellee under the adverse witness rule, the Church's pastor testified that the purpose of the hayride was, in part, to promote the Church's fellowship in the community. He also gave a somewhat equivocal answer when asked whether the hayride helped to "further the goals and ideals and fellowship of the [Church]." (Trial transcript at pp. 20–21). Later, when recalled as a witness for the defendant, the pastor at least partially contradicted his earlier testimony by testifying that the only benefits conferred on the Church were those incidental to hospitality and companionship and that the purpose of the hayride was not to get new members. There was also testimony that, while Tony Hall was not an official member of the Church, he had attended the Church 10 to 15 times in the year and a half before the hayride and that he had contributed to the offering when he attended.

The Arkansas Supreme Court has on numerous occasions stated that the question

of whether a passenger is a guest is normally to be decided by the jury. *Graves,* 628 S.W.2d at 565. *Buffington,* 388 S.W.2d at 102; *Simms,* 335 S.W.2d at 450; *Rogers,* 296 S.W.2d at 902; *Brand v. Rorke,* 225 Ark. 309, 280 S.W.2d 906, 907 (1955). Moreover, "even when facts are uncontroverted ... if fair minded men might honestly differ as to the conclusion to be drawn from the facts, then the question should go to the jury." *Graves,* 628 S.W.2d at 565; *accord Simms,* 335 S.W.2d at 450; *Whittecar,* 287 S.W.2d at 580 (concurring opinion). *But see Whittecar,* 287 S.W.2d at 579.

After careful consideration of the entire trial transcript, especially those portions discussed above, we find that reasonable jurors could have concluded that the hayride was for the mutual benefit of the Church and those attending, including Tony Hall. This is not to say that is the only reasonable conclusion that could properly be drawn from the evidence. A jury finding that Tony Hall was a guest would also be supportable by the record below. In such a situation, it is the function of the jury, not the trial court, to decide the facts and the inferences to be drawn therefrom. Thus, the trial court erred in directing a verdict on this issue.

Reversed and remanded for a new trial in accordance with this decision.

ARNOLD, Circuit Judge, concurring in part and dissenting in part.

Because I believe that the evidence was sufficient, though perhaps only barely so, to make a jury issue as to the willful and wanton conduct of defendant's insured, I respectfully dissent from part I of the Court's opinion. I would affirm the judgment of the District Court.

This case comes to us on appeal from a judgment entered on the verdict of a jury. Both the trial court and this Court have power to reject that verdict and enter judgment n.o.v., but the power should be exercised with great restraint. Our reviewing function in this situation is circumscribed, and we owe more deference to the verdict of a jury than to any other factfinder. In addition, the question presented here, whether a rational jury could have found willful and wanton conduct, viewing all of the evidence in the light most favorable to the plaintiff, is governed by Arkansas law. The District Court refused to set aside the jury's verdict, thus announcing its view of the law of its own state, and we normally defer to such decision.

Here, there is no opinion of the Supreme Court of Arkansas directly in point. The cases go both ways, and the fact situation shown by this record is not exactly like any that the Supreme Court of Arkansas has faced. Certainly the jury would have been well within its rights to find no willful or wanton conduct here, but I believe that the opposite is also true. The verdict of the jury represents essentially the moral judgment of the community that this particular trailer was so obviously dangerous that allowing the hayride to proceed, with full knowledge of the danger, could properly be characterized as willful or wanton. I do not believe that this characterization of the conduct of the insured is sufficiently shocking or egregious to enable us to set aside the jury's finding.

Since the Court has ruled otherwise, however, I deem it appropriate to add that I agree with and join in part II of the Court's opinion. It was error not to submit to the jury the question whether plaintiff was a guest, and this question should be submitted, under appropriate instructions, at the new trial that will occur on remand.